UNITED STATES, Appellee,

v.

George L. BAKER, Private First Class,
U.S. Army, Appellant.

No. 41,214.

CM 440082.

U.S. Court of Military Appeals.

Jan. 3, 1983.

For Appellant: *Captain Peter R. Huntsman* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Raymond C. Ruppert, Major Robert C. Rhodes, Captain Chuck R. Pardue* (on brief).

For Appellee: *Captain Richard G. Mann, Jr.* (argued); *Colonel R.R. Boller, Major John T. Edwards, Major Michael L. De-Busk, Captain Daniel T. Hartnett* (on brief); *Major Robert B. Williams.*

Opinion of the Court

FLETCHER, Judge:

At Fort Ord, California, in July and August 1980, appellant was tried by a general court-martial composed of officer and enlisted members. The military judge presiding at this court-martial accepted appellant's pleas of guilty to assault and battery on Jacqueline Cooper, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928. He also accepted pleas of guilty to aggravated assault on Donna Shipp, in violation of Article 128, and communication of a threat to the same person, in violation of Article 134, UCMJ, 10 U.S.C. § 934. The military judge entered findings of guilty against appellant based on these guilty pleas. The members sentenced appellant to a bad-conduct discharge, confinement at hard labor for 2 years, forfeitures of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence but, in accordance with a pretrial agreement, suspended confinement in excess of 20 months. The United States Army Court of Military Review affirmed the findings and sentence.

The facts in this case pertinent to the granted issues are contained in prosecution exhibit 1, a stipulation of fact between the Government and appellant, which stated:

On or about 11 April 1980, Miss Donna M. Shipp ate dinner with a friend at the NCO Club at Fort Ord, California. At approximately 9 p.m. after she had finished her meal, Miss Shipp took a "doggie bag" out to her car, which was parked along the sidewalk at the rear of the club. As she was leaving the dining area, she witnessed an argument between the Master of Arms at the door and the accused who was seeking to gain admittance to the club. She had never before seen the accused. Miss Shipp passed these two individuals as she walked down the hallway and out of the doorway to her car. She overheard the MA telling the accused he would have to have a card to prove membership and without that card he could not be admitted to the club. The arguing continued as she exited the building and went to her car. About the time Miss Shipp got to her car she had the feeling that someone was behind her following her. She walked around to the driver's side of the car and unlocked the door so she could place the sack inside the vehicle. At the time she saw a man walking towards her. She told him to leave her alone, closed the door to the vehicle and walked around the front of the vehicle so that the car would be between them. The accused ran around the back of the car, cutting off the only route back to the building, and grabbed Miss Shipp by the arms holding her in front of him. Although the parking area was dimly lit, Miss Shipp was face to face inches from this individual and recognized him as the same person she had seen inside the building. He asked her where she was going and she replied, "Back into the club." Miss Shipp demanded that he let go of her and leave her alone, and he responded by saying he was from San Francisco and just needed some company. The accused held his grip on Miss Shipp and she again requested that he let go of her. Instead, the accused threw her up against the metal body of her car and said, "I've got a pistol in my pocket and I'm desperate." The accused told Miss Shipp to get in her car and take him where he wanted to go. Miss Shipp replied that she couldn't because she didn't have any gas and also had no money to buy gas since her purse was inside the building. At this time the accused placed one hand on Miss Shipp's neck and started choking her and grabbed her hair with the other hand and hit it against the metal body of the vehicle several times. The accused asked Miss Shipp if she understood, but she was unable to reply because he was strangling her and she was attempting to loosen his

grip on her throat. He continued to choke her and hit her head against the car body while saying, "If you don't get in the car and take me where I want to go, I'm going to kill you. I've got a pistol," or words to that effect. The accused let go of Miss Shipp's hair and hit her in the abdomen a couple of times asking her if she then understood.

Under the circumstances, the language used by the accused constituted an avowed present determination or intent to injure the person of Miss Donna M. Shipp and she felt threatened by the use of this language. This communication was wrongful, and without any justification or excuse and the conduct of the accused was to the prejudice of good order and discipline in the armed forces.

It also should be noted that the military judge did not instruct the members that the findings of guilty with respect to the offenses against Donna Shipp were not separate for purposes of sentencing, nor did the defense request such an instruction. If he had, the members would have been informed that the maximum authorized punishment in this case was 3 years and 6 months rather than 6 years and 6 months which they were told.

The issues granted for review in appellant's case particularly address the question of the separateness of his aggravated assault offense and his communication of a threat offense for purposes of punishment. Para. 76a (5), Manual for Courts-Martial, United States, 1969 (Revised edition). We note, however, that questions are raised throughout the appellate briefs [1] concerning the propriety of charging appellant (para. 26b, Manual, *supra* ) and finding him guilty of both these offenses. *See* para. 74b (4),

Manual, *supra.* Therefore, in approaching the granted issues, we believe it helpful to address these questions as well. In this regard we observe that appellant was charged, pleaded guilty to and was found guilty of the following charges and specifications.

Additional Charge I: Violation of the Uniform Code of Military Justice, Article 128.

Specification: In that Private First Class E–3 George L. Baker, US Army, Company C, 3rd Battalion, 32nd Infantry, 2d Brigade, 7th Infantry Division, did, at Fort Ord, California, an installation subject to military control, on or about 11 April 1980, commit an assault upon Donna M. Shipp by striking and choking her with a means and force likely to produce grievous bodily harm, to wit: choking the said Donna M. Shipp with his hands and striking her head against the metal body of an automobile.

Additional Charge II: Violation of the Uniform Code of Military Justice, Article 134.

Specification: In that Private First Class E–3 George L. Baker, US Army, Company C, 3rd Battalion, 32nd Infantry, 2d Brigade, 7th Infantry Division, did, at Ford Ord, California, an installation subject to military control, on or about 11 April 1980, wrongfully communicate to Donna M. Shipp a threat to kill her, by saying to her, "If you don't get in the car and take me where I want to go, I'm going to kill you. I've got a pistol," or words to that effect.

## I

The decision to prefer charges against a service member for a violation of

---

1. The defense broadly asserts that these two offenses were multiplicious. Multiplicity is a term which is barren of substantive meaning unless it is considered within a particular procedural context. For example, a multiplication of charges as a matter of pleading may infringe on the defendant's right to a fair trial or his right to prepare a defense. *See Pointer v. United States,* 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894); Article 36, Uniform Code of Military Justice, 10 U.S.C. § 836; para. 26b, Manual for Courts-Martial, United States, 1969 (Re-

vised edition). Multiple convictions may raise questions concerning Double Jeopardy under the Fifth Amendment and Article 44, UCMJ, 10 U.S.C. § 844. *See* Notes and Comments, *Twice in Jeopardy,* 75 Yale L.Rev. 262, 311–13 (1965). Multiple punishments not only raise Double Jeopardy questions (*Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)), but also due process questions in the military justice system. Article 56, UCMJ, 10 U.S.C. § 856; para. 76a (5), Manual, *supra.*

the Uniform Code of Military Justice can be made by any person who is also subject to this code. Article 30(a), UCMJ, 10 U.S.C. § 830(a). Yet the decision to prosecute a service member is made by a convening authority with advice from his staff judge advocate when he refers these charges to court-martial. *See* para. 33*h*, Manual, *supra;* Moyer, *Justice and the Military* § 2–382 (1972). Embraced within this prosecutorial decision is his determination as to the number of offenses which he chooses to refer to trial against an accused. *See* Article 34(a), UCMJ, 10 U.S.C. § 834(a); *see also* 8 *Moore's Federal Practice* § 8.02[1] (2d ed. 1982). As a general rule, the convening authority, similar to a civilian prosecutor, is free to decide the number of offenses to charge when a service member's conduct violates more than one criminal statute. *See* ABA Standards, The Prosecution Function 3–3.9, Commentary (1979); ALI Model Penal Code § 108(1) (Tentative Draft No. 5) (1956); *see generally* Remington and Joseph, *Charging, Convicting, and Sentencing the Multiple Criminal Offender,* 1961 Wis.L.Rev. 528, 530; *see also Ashe v. Swenson,* 397 U.S. 436, 453, 90 S.Ct. 1189, 1199, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring).

Although the prosecutorial discretion of a convening authority is broad, it is not unlimited. *See generally Bordenkircher v. Hayes,* 434 U.S. 357, 365, 98 S.Ct. 663, 669, 54 L.Ed.2d 604 (1978); *cf. Carter v. McClaughry,* 183 U.S. 365, 386, 22 S.Ct. 181, 189, 46 L.Ed. 236 (1902). One well-established limitation on the power of the prosecutor is that he cannot, for the purpose of influencing the jury, charge a single offense in several counts. *See* Wright, *Federal Practice and Procedure* § 142 (1969). The President in paragraph 26*b*, Manual, *supra,* has adopted this rule of pleading for courts-martial practice. This paragraph states:

b. *Offenses arising out of one transaction. One transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multi-*

*plication of charges against one person.* A person should not be charged with both disorderly conduct and assault if the disorderly conduct consisted in making the assault, or with both a failure to report for a routine scheduled duty, such as reveille, and with absence without leave if the failure to report occurred during the period for which he is charged with absence without leave. The larceny of several articles should not be alleged in several specifications, one for each article, when the larceny of all of them can properly be alleged in one specification (200*a* (8)). If a person willfully disobeys an order to do a certain thing, and persists in his disobedience when the same order is given by the same or other superior, a multiplication of charges of disobedience should be avoided (169*b*). *There are times, however, when sufficient doubt as to the facts or the law exists to warrant making one transaction the basis for charging two or more offenses. See* 74*b* (4) and 76*a* (5).

(Emphasis added.)

■ This type of provision is designed in part to prevent certain abuses of prosecutorial power which might embarrass or confound the accused in his defense at trial. *Pointer v. United States,* 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894); *see generally* Moore's, *supra,* § 8.07[1]. In particular, it seeks to avoid the situation where a single criminal offense is exaggerated into many seemingly separate crimes so as to create the impression that the accused is a bad character and therefore lead the court-martial to resolve against him doubt created by the evidence. *United States v. Middleton,* 12 U.S.C.M.A. 54, 58, 30 C.M.R. 54, 58 (1960); Wright, *supra.* The remedy for a prejudicial and unreasonable multiplication of charges when discovered at the appellate level may be drastic. *United States v. Sturdivant,* 13 M.J. 323 (C.M.A.1982); *cf. United States v. Strand,* 6 U.S.C.M.A. 297, 20 C.M.R. 13 (1955); Fed.R.Crim.P. 14.[2]

2. This Court originally viewed an unreasonable multiplication of charges as error without prejudice unless an accused was sentenced separately for both offenses. *See United States v. Posnick,* 8 U.S.C.M.A. 201, 24 C.M.R. 11 (1957), and cases cited therein. In *United States v.*

■ In applying this rule, it first should be determined whether the charged offenses are based on "[o]ne transaction or what is substantially one transaction." Similar language appears in Fed.R.Crim.P. 8(a). Although the word transaction is flexible in meaning, it is generally construed to embrace a series of occurrences or an aggregate of acts which are logically related to a single course of criminal conduct. See Moore's, supra, § 8.07[2]; Wright, supra, § 143; 1 Bishop, A Treatise on Criminal Law § 777 (9th ed. 1923). In the present case, the specifications themselves and the evidence at trial clearly show that the aggravated assault upon and the communication of a threat to Donna Shipp were related in this manner. Both offenses were acts committed by appellant as part of his effort to compel this woman to drive him somewhere in her car.

■ The second step in applying this Manual provision is to determine whether alleging both these charges on the basis of one transaction constitutes a "multiplication of charges." See para. 26b, Manual, supra.[3] The President did not provide an abstract definition of this phrase but he did provide several examples of what he would consider multiplicious charges. See generally Wright, supra, § 142; Moore's, supra, § 8.07[1]. These examples indicate that charges are multiplied in several situations. First, it occurs where the offenses charged stand in the relationship of greater and lesser offenses. See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, p. 41; Brown v. Ohio, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Second, it occurs where the charges alleged

as a matter of fact are parts of an indivisible crime as a matter of civilian or military law. See Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957); Bishop, supra, § 1053.11. Third, it exists where both charged offenses are different aspects of a continuous course of conduct prohibited by one statutory provision. See United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952); Ex parte Snow, 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887). In these situations, the same criminal offense is charged in different ways such that they are duplicative as a matter of law. See United States v. Middleton, supra at 58, 30 C.M.R. at 58; United States v. Drexler, 9 U.S.C.M.A. 405, 407–08, 26 C.M.R. 185, 187–88 (1958).

■ In the present case, appellant was not charged with the same offense in two counts, but rather he was charged with separate offenses in different counts. See Wright, supra. More particularly, he was charged with aggravated assault in violation of Article 128(b)(1). In general, this offense requires that the Government show that appellant committed an assault with a means likely to produce grievous bodily harm. See para. 207c(1), 1969 Manual, supra. Here, the Government charged appellant with "choking the said Donna M. Shipp with his hands and striking her head against the metal body of an automobile." This fact is not alleged or required to be alleged in the communication of a threat charge. In addition, the communication-of-a-threat offense requires the communication of language which places the victim in

Drexler, 9 U.S.C.M.A. 405, 408, 26 C.M.R. 185, 188 (1958), this Court began dismissing the charges which were found unduly multiplicious as a result of a similar federal practice. In United States v. Middleton, 12 U.S.C.M.A. 54, 58, 30 C.M.R. 54, 58 (1960), the Court first recognized that such error might affect other findings of guilty as a matter of due process. In United States v. Sturdivant, 13 M.J. 323 (C.M.A.1982), drastic action dismissing all the charges and specifications on due-process grounds was taken for the first time.

3. This Manual provision is substantially the same as paragraph 26b, Manual for Courts-Martial, United States, 1951; para. 27, Manual for Courts-Martial, U.S. Army, 1949; and para. 27, Manual for Courts-Martial, U.S. Army, 1928. In earlier provisions, a similar practice was called duplication of charges for the same act or omission. See para. 66, Manual for Courts-Martial, U.S. Army, 1921 and 1917. The military's displeasure with this practice was even earlier evidenced. See Davis, A Treatise on the Military Law of the United States 72 (1913); W. Winthrop, Military Law and Precedents 143, 148 (2nd ed. 1920 Reprint).

fear of future harm or injury. *See* Article 134; para. 213*f*(10), Manual, *supra.* Specifically, the Government alleged particular words that appellant used in accomplishing this threat. This fact was not alleged or required to be alleged in the aggravated-assault charge. These offenses do not normally stand in the relationship of greater and lesser offenses. *See* Bishop, *supra,* § 1053.12. Neither offense is generally considered, as a matter of legislative intent, to be indivisible or prohibitive of a course of conduct. Accordingly, a single offense was not charged twice and there was no multiplication of charges in the present case. *See Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Young v. United States,* 288 F.2d 398 (D.C. Cir.1961), *cert. denied,* 372 U.S. 919, 83 S.Ct. 734, 9 L.Ed.2d 725 (1963).

The third step in the application of this rule need not be undertaken in the present case because there was no multiplication of charges as defined by the President. In any event, if some doubt existed on this question as a matter of law or the Government justified this charging decision on the basis of a realistic contingency in proof, the military judge still need not consider these pleadings as an unreasonable multiplication of charges. Para. 26*b,* Manual, *supra. See United States v. Mamber,* 127 F.Supp. 925 (D.Mass.1955).

## II

The next preliminary question we must address is whether it was proper for the military judge to find appellant guilty of these two offenses. *See United States v. McAnaugh,* 13 M.J. 295 (C.M.A.1982); *United States v. Stegall,* 6 M.J. 176 (C.M.A. 1979).

4. These are not the only situations where the Double Jeopardy Clause of the Fifth Amendment and Article 44 would prohibit multiple convictions at a single trial. Both convictions cannot stand if they are part of a criminal offense intended by the legislature to be indivisible (*see Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957)) or different aspects of a continuous course of con-

■ Paragraph 74*b*(4), Manual, *supra,* states the general rule as to whether an accused can be convicted for multiple offenses arising from a single transaction, as follows: "The accused may be found guilty of two or more offenses arising out of the same act or transaction, without regard to whether the offenses are separate." *See also United States v. Middleton, supra.* This rule, however, is not without exceptions and it must be viewed in the context of the Constitution and the Uniform Code of Military Justice. *See generally* ALI Model Penal Code § 108(1) (Approved Draft 1962); Notes and Comments, *Twice in Jeopardy,* 75 Yale L.Rev. 262, 311–13 (1965). For example, where inconsistent findings of fact are required to establish the commission of the offenses, the accused may not be convicted of both offenses. *United States v. Cartwright,* 13 M.J. 174 (C.M.A.1982); *see also United States v. Marks,* 11 M.J. 303 (C.M.A.1981); *United States v. Pretty,* 11 M.J. 153 (C.M.A.1981). In other cases, where the pleadings and evidence adduced at trial show that one offense is a lesser included offense of another of which an accused has also been convicted, both convictions cannot stand. *See United States v. Stegall, supra* at 178; *see generally Brown v. Ohio, supra.*[4]

Article 79, UCMJ, 10 U.S.C. § 879, states:

An accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein.

*See* Article 51(c)(3), UCMJ, 10 U.S.C. § 851(c)(3). In interpreting Congress' intent in enacting this provision this Court has defined a lesser-included offense as follows:

When both offenses are substantially the same kind so that accused is fairly ap-

duct prohibited by the legislature in a single statutory provision (*Ex parte Snow,* 120 U.S. 274, 7 S.Ct. 556, 30 L.Ed. 658 (1887)). *See generally* 75 Yale L.Rev., *supra.* As indicated earlier, these situations are not raised in the present case. *See Ladner v. United States,* 358 U.S. 169, 178 n. 6, 79 S.Ct. 209, 214 n. 6, 3 L.Ed.2d 199 (1958).

prised of the charges he must meet and the specification alleges fairly, and the proof raises reasonably, all elements of both crimes, we have held they stand in the relationship of greater and lesser offenses.

*United States v. Duggan,* 4 U.S.C.M.A. 396, 399–400, 15 C.M.R. 396, 399–400 (1954).

■ This definition, though broader than the one articulated in paragraph 158, Manual, *supra,* is consistent with the accepted interpretation of modern penal statutes. *See Some Observations on Lesser Included Offenses,* 30 Mil.L.Rev. 120–24 (1965); Comments, *Jury Instructions on Lesser Included Offenses,* 57 Nw.L.Rev. 62–65 (1962). Assuming both offenses arise out of one transaction, one offense may be a lesser-included offense of another offense in two situations: First, where one offense contains only elements of, but not all the elements of the other offense; second, where one offense contains different elements as a matter of law from the other offense, but these different elements are fairly embraced in the factual allegations of the other offense and established by evidence introduced at trial. *See Jeffers v. United States,* 432 U.S. 137, 152 n. 20, 97 S.Ct. 2207, 2217 n. 20, 53 L.Ed.2d 168 (1977); 57 Nw.L. Rev., *supra;.*

■ Turning to the case before us, it is quite clear that appellant could be found guilty of both aggravated assault upon, and communication of a threat to, Donna Shipp. The factual findings supporting these findings of guilty are not inconsistent. Moreover, each of these offenses, though arising from one transaction and being similar in nature, embraces elements not found in the other. Additionally, the factual allegations constituting the charged offense of aggravated assault contain no extraneous express or implied allegation that appellant communicated a threat to the victim and vice versa. Under these circumstances and despite the evidence adduced at trial that the threat occurred during the assault, we cannot say as a matter of law that the communication of a threat was a lesser-included offense of this aggravated-assault offense. *United States v. Duggan, supra.*

### III

This Court is now in a position to address the second granted issue. It is:

WHETHER THE MILITARY JUDGE ERRED BY INSTRUCTING THE COURT MEMBERS THAT THE MAXIMUM PUNISHMENT INCLUDED CONFINEMENT FOR SIX YEARS AND SIX MONTHS INSTEAD OF THREE YEARS AND SIX MONTHS AS WAS PROPER.

As a starting point, we note that paragraph 76*b*(1), Manual, *supra,* states: "Before a court-martial closes to deliberate and vote on the sentence, the military judge ... must give appropriate instructions on the punishment, to include a statement of the maximum authorized punishment which may be imposed." *See United States v. Turner,* 9 U.S.C.M.A. 124, 129, 25 C.M.R. 386, 391 (1958). If appropriate instructions are not given by the military judge, such error must be tested for prejudice before the sentence is set aside. Article 59(a), UCMJ, 10 U.S.C. § 859(a); *United States v. Guilbault,* 6 M.J. 20, 22 (C.M.A.1978).[5]

5. Strictly speaking, double-jeopardy issues are not raised in the present case because appellant's aggregate punishment was not in excess of that authorized for the aggravated-assault offense and the assault offense against Jacqueline Cooper. *See Albernaz v. United States, supra* at 344, 101 S.Ct. at 1145. Although this provision of the Fifth Amendment protects against multiple punishments for the same offense at a single trial, its purpose is to prevent the executive and judicial branches of our Government from punishing arbitrarily without legitimate justification from the legislature.

*Id.; see* 75 Yale L.Rev. at 265–66, nn. 12 and 13, 299–321. In the military justice system, as in the federal criminal law system, Congress has the power to define criminal offenses and prescribe punishments. *Albernaz v. United States, supra; Carter v. McClaughry,* 183 U.S. 365, 388–90, 22 S.Ct. 181, 190–91, 46 L.Ed. 236 (1902). However, through various provisions of the Uniform Code of Military Justice, Congress within certain limits has permitted the executive branch broad power to further limit punishments. Article 56. A violation of these further restrictions by a court-martial does not

Appellant initially asserts that the military judge incorrectly computed the maximum authorized punishment which could be imposed for all the offenses for which he was found guilty at this court-martial. *See generally* Moyer, *supra* § 2–664. He points out that the military judge in reaching a total punishment of 6 years and 6 months added together 6 months for the assault and battery on Jacqueline Cooper, 3 years for the aggravated assault on Donna Shipp and 3 years for communicating a threat to Donna Shipp. Appellant contends that the threat offense was not separate from his assault offense and thus merged with the latter offense for purposes of computing the maximum authorized punishment. Para. 76a (5), Manual, *supra; see United States v. Lockett,* 7 M.J. 753 (A.C.M.R. 1979), *pet. denied* 7 M.J. 329 (1979); *United States v. Kinion,* 5 M.J. 930 (N.C.M.R.1978); *United States v. Little,* 44 C.M.R. 833 (A.F. C.M.R.1971); *United States v. Thurman,* 42 C.M.R. 916 (N.C.M.R.1970). Accordingly, he asserts that the correct maximum confinement which could be imposed in his case was 3 years and 6 months. We agree.

▮ Paragraph 76a (5) of the Manual states the general principle of law upon which our conclusion is based: "The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction." From this principle, two rules can be deduced: First, if the offenses do not arise from the same act or transaction punishment may be imposed for each offense—*see United States v. Ompad,* 15 U.S.C.M.A. 593, 36 C.M.R. 91 (1966); second, if the offenses arise from the same act or transaction, a punishment may not be imposed for each offense if they are not separate offenses—*see Blockburger v. United States, supra.*

▮ The Government implies in its brief that these offenses did not arise from the same act or transaction. It asserts that the assault and the communication of a threat

were not united in time and occurrence. We disagree. It is manifest in the record of trial that these two offenses occurred contemporaneously, at the same place, and during appellant's lone encounter with Donna Shipp. *See United States v. Irving,* 3 M.J. 6 (C.M.A.1977); *see also United States v. Harrison,* 4 M.J. 332, 335 (C.M.A.1978) (Fletcher, C.J., dissenting).

The defense on the other hand asserts these offenses were not separate. Paragraph 76a (5), Manual, *supra,* states "that offenses are not separate unless each requires proof of an element not required to prove the other." *See Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Blockburger v. United States, supra.* The aggravated assault charged against appellant required a showing that he utilized a means likely to produce grievous harm. Article 128(b)(1); *see* para. 207c (1), Manual, *supra.* The communication of a threat for which appellant was convicted does not. Moreover, the latter offense requires the communication of certain language to the victim. Article 134; para. 213f (10), Manual, *supra.* The particular offense of aggravated assault for which appellant was convicted did not require this element of proof. Accordingly, it is clear in the present case that these two offenses met the minimum requirement for separateness for purposes of punishment which is articulated in the Manual.

In any event, contrary to the assertion of the Government, the President did not simply adopt the so-called "Blockburger" rule to determine whether offenses arising from the same transaction were separate for purposes of punishment in the military justice system. *See* Article 56, UCMJ, 10 U.S.C. § 856. Paragraph 76a (5), Manual, *supra,* states:

Care must be exercised in applying the general rule stated in the above paragraph as there are other rules which may be applicable, with the result that in some instances a final determination of wheth-

---

fit neatly into this doctrinal pigeonhole. *But see McClaughry v. Deming,* 186 U.S. 49, 22 S.Ct. 786, 46 L.Ed. 1049 (1902); *Runkle v. Unit-*

*ed States,* 122 U.S. 543, 7 S.Ct. 1141, 30 L.Ed. 1167 (1887).

er two offenses are separate can be made only after a study of the circumstances involved in the individual case. The following are examples of rules under which offenses may not be separate although each offense requires proof of an element not required to prove the other. [Examples omitted.]

Accordingly, to the extent that the Government relies on the "Blockburger" rule to decide this question, it is incorrect.

One example of such a rule which shows that offenses are not separate for purposes of punishment even though they each contain different elements of proof is provided by the President in paragraph 76a(5)(b). There he states "offenses may not be separate ... *[w]hen two offenses are committed as the result of a single impulse or intent.*" The record of trial makes it abundantly clear that appellant both assaulted Donna Shipp and communicated a threat to her for the purpose of compelling her to drive him somewhere in her car. There is not a shred of evidence in the record establishing even an inference that either of these offenses was committed for any other purpose. Accordingly, we hold that the military judge erred in considering these offenses separate for purposes of punishment.

▮ The Government nonetheless relies on the remaining portion of paragraph 76a(5) for its conclusion that the military judge could properly find these offenses separate for purposes of punishment. It states:

> The following are examples of rules which establish that offenses are separate whether or not each offense requires proof of an element not required to prove the other:
>
> (a) *When the offenses involve violations of different social standards.*

We note that paragraph 76a(5) is ambiguous as to whether these remaining rules need be resorted to when each of two offenses contains different elements of proof *and* they are the product "of a single impulse." Where such ambiguity exists in interpreting punishment rules, lenity should be applied in favor of the person to be

punished. *Albernaz v. United States, supra* at 342, 101 S.Ct. at 1144. In any event, both the aggravated assault and the communication of a threat violate the same social standard, *i.e.,* the right of the individual to be secure in life and limb. *United States v. Holiday,* 4 U.S.C.M.A. 454, 458, 16 C.M.R. 28, 32 (1954). Accordingly, we hold that in the present case these two offenses were not separate for purposes of punishment.

## IV

The remaining question to be answered is the relief, if any, which must be afforded appellant as a result of the military judge's instructional error. Article 59(a). Appellant, in his first granted issue, asserts that his pleas of guilty should be vacated and a rehearing ordered. 12 M.J. 54 (C.M.A.1981). Such a remedy was found inappropriate in *United States v. Walls,* 9 M.J. 88 (C.M.A. 1980). In the alternative, he asserts that a rehearing on sentence is required because the members were substantially misled as to a critical factor in their sentencing deliberations. Such a suggestion ignores the unique sentencing powers of the Court of Military Review. *Cf. United States v. Lenoir,* 13 M.J. 452 (C.M.A.1982). We hold that the decision of the United States Army Court of Military Review is reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Army for submission to that Court for reassessment of the sentence in light of this opinion. *United States v. Cabebe,* 13 M.J. 303, 307 (C.M.A.1982); *United States v. Smith,* 1 M.J. 260 (C.M.A.1976); *United States v. Burney,* 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971).

EVERETT, Chief Judge (concurring):

I concur in the principal opinion's conclusion that, since the aggravated assault and the communication of a threat were part of the same transaction, sprang from the same impulse, and violated the same social standard, they could not be aggregated for punishment purposes. However, in my view the dissent properly speaks of "the mess in

the military justice system regarding multiplicity for sentencing" and correctly places the blame for this unhappy situation on our Court, rather than on the President. Nevertheless, unlike the dissenting Judge, I do not choose to repudiate almost three decades of precedent—now reflected in Manual provisions, see para. 76a (5), Manual for Courts-Martial, United States, 1969 (Revised edition)—in order to return to the simplicity of the *Blockburger* * rule, which was the only test specifically authorized by the President in the 1951 Manual. *See* para. 76a (8), Manual for Courts-Martial, United States, 1951.

Since in civil courts concurrent sentences often are imposed on the different counts of an indictment, the separateness of those counts for punishment purposes will be a moot question in many cases. On the other hand, the unitary sentence employed in military courts tends to bring the issue of separability to the fore quite frequently. For example, our Court has grappled with a host of cases which concerned the separateness of various drug offenses for pleading and punishment purposes. Even so, I believe it is more appropriate to endure the present "mess," rather than to expose military accused to the harshness of a strictly applied *Blockburger* rule. Moreover, in the records of trial that I have observed, it does not appear to me that the limitations now placed on the operation of that rule have resulted in sentences that were not "appropriate" or were unduly lenient; but I can foresee that the removal of such limitations might lead to sentences that were inappropriately severe and to overreaching by prosecutors in an effort to induce plea bargains.

COOK, Judge (dissenting):

Initially, I must state my disagreement with the contention advanced in the principal opinion that "the President did not simply adopt the so-called 'Blockburger' rule to determine whether offenses arising from the same transaction were separate for purposes of punishment in the military justice system." 14 M.J. 361, 369. In *Block-*

*burger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court announced the following rule of statutory construction:

Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

The President, in the Manual for Courts-Martial, United States, 1951, set forth the following test with respect to multiplicity for punishment:

The maximum authorized punishment may be imposed for each of two or more separate offenses arising out of the same act or transaction. The test to be applied in determining whether the offenses of which the accused has been convicted are separate is this: The offenses are separate if each offense requires proof of an element not required to prove the other. Thus, if the accused is convicted of escape from confinement (Art. 95) and desertion (Art. 85)—both offenses arising out of the same act or transaction—the court may legally adjudge the maximum punishment authorized for each offense because an intent to remain permanently absent is not a necessary element of the offense of escape, and a freeing from restraint is not a necessary element of the offense of desertion. An accused may not be punished for both a principal offense and for an offense included therein because it would not be necessary in proving the included offense to prove any element not required to prove the principal offense.

Para. 76a (8). The Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, at 78, states that:

The rule that offenses are separate if each offense requires proof of an element not required to prove the other is com-

* *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

monly referred to as the "Blockburger rule," having been taken from the opinion of the Supreme Court in *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306.

Thus the Manual rule was, or was at least thought to be, simply a restatement of the *Blockburger* rule.

The additional tests for multiplicity in sentencing, first set forth in paragraph 76*a* (5), Manual for Courts-Martial, United States, 1969 (Revised edition), are not attributable to the President, but merely represent acquiescence to decisions of this Court. In Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition), DA PAM 27–2, the drafters stated, regarding paragraph 76*a:*

> The second paragraph contained in subparagraph (5) is a new addition which shows that there are other rules which must be considered besides the general rule before it is finally determined whether or not offenses are separate. These rules were announced respectively in *United States v. Redenius,* 4 U.S.C.M.A. 161, 15 C.M.R. 161 (1954); *United States v. Kleinhans,* 14 U.S.C.M.A. 496, 34 C.M.R. 276 (1964); *United States v. Beene,* 4 U.S.C.M.A. 177, 15 C.M.R. 177 (1954); and *United States v. Soukup,* 2 U.S.C.M.A. 141, 7 C.M.R. 17 (1953).

Thus the President is not responsible for the mess in the military justice system regarding multiplicity for sentencing, and no weight should be attached to the fact that the additional tests are set forth in paragraph 76*a* (5), 1969 Manual, *supra. See United States v. Clardy,* 13 M.J. 308, 315 (C.M.A.1982).

That multiplicity for sentencing is a mess in the military justice system is a proposition with which I believe few people familiar with our system would take issue. Servicemembers are often forced to make the fundamental decision whether to contest a case or to plead guilty, possibly in conjunction with a pretrial agreement, without the slightest appreciation of the risks at stake. *See United States v. Walls,* 9 M.J. 88 (C.M.A.1980) (plea of guilty not improvident though maximum confinement 10 years rather than 20 years as thought); *United States v. Frangoules,* 1 M.J. 467 (C.M.A. 1976) (plea of guilty not improvident, though sentence reversed, where maximum confinement 2 years rather than 6 years); *United States v. Harden,* 1 M.J. 258 (C.M.A. 1976) (plea of guilty improvident where maximum confinement 10 years rather than 20 years); *United States v. Swaney,* 9 M.J. 749 (A.C.M.R.1980) (plea of guilty not improvident where maximum confinement 6 years rather than 12 years); *United States v. Riggs,* 4 M.J. 607 (A.C.M.R.1977), *petition dismissed,* 5 M.J. 398 (1978) (plea of guilty not improvident though maximum confinement 14 years rather than 29 years). By the same token, cases are often overturned years after trial simply because some higher level of review selected a different test for multiplicity from that agreed upon by the trial participants. The instant case is such an example. This is not justice; this is chaos!

The problem is not that there are insufficient tests for multiplicity; the problem is that there are so many. *See United States v. Harrison,* 4 M.J. 332 (C.M.A.1978); *United States v. Burney,* 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971); *United States v. Beene,* 4 U.S.C.M.A. 177, 15 C.M.R. 177 (1954); *United States v. Chisholm,* 10 M.J. 795, 798 n. 3 (A.F.C.M.R.1981), *pet. denied,* 11 M.J. 368 (1981). Some of the tests seem to overlap and represent merely different ways of stating the same essential concept. Different tests, applied to the same facts, often produce opposite results. Some tests are so subjective that, applied to the same facts, they can produce different results for different people. The onus of responsibility for this state of confusion lies not with the Congress, not with the President, but with this Court. Where did we go wrong?

The answer, I believe, lies in the very statute which created the Court and assigned its proper function in the military justice system—the Uniform Code of Military Justice, 10 U.S.C. §§ 801, *et seq.* There, in Articles 36(a) and 56, 10 U.S.C. §§ 836(a) and 856, respectively, Congress

expressly delegated *to the President* the authority to establish procedures and to define the limits of punishment in courts-martial. Pursuant to that delegation, the President duly established, first in paragraph 76a (8), 1951 Manual, *supra,* the test to be utilized in determining separability of punishment—the so-called "*Blockburger*" or "elements" test. Nowhere in the Uniform Code of Military Justice does it appear, either expressly or by implication, that this Court has the authority to make rules with respect to sentencing which either supplement, impinge upon, or override the rules established by the Executive. *See* Article 67, UCMJ, 10 U.S.C. § 867. Therefore, absent some constitutional infirmity, the rules established by the President for determining multiplicity questions are the rules which this Court must accept and apply.

By way of comparison, the Federal courts, under the leadership of the Supreme Court, have adopted a similar approach and seem to have outdistanced this particular "Sargasso Sea." *See Albernaz v. United States,* 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981). *Albernaz* was but the most recent iteration of the "*Blockburger*" rule. *See also Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975); *Gore v. United States,* 357 U.S. 386, 389, 78 S.Ct. 1280, 1282, 2 L.Ed.2d 1405 (1958); *American Tobacco Co. v. United States,* 328 U.S. 781, 788, 66 S.Ct. 1125, 1128, 90 L.Ed. 1575 (1946).

In *Albernaz,* the Supreme Court emphasized the primacy of congressional intent in multiplicity analysis. 450 U.S. at 340–43, 101 S.Ct. at 1143–44. The petitioners in *Albernaz* were convicted of conspiring simultaneously to import and to distribute drugs in violation of separate sections of the United States Code; the trial court imposed consecutive punishments. Petitioners contended that it was unclear whether Congress intended to authorize multiple punishments for violations of the two statutes in a case involving only a single agreement or conspiracy, even though the agreement had dual objectives. Noting that the "statutory provisions . . . [were] unambiguous on their face" and had a legislative history which gave them "no reason to pause over the manner in which these provisions should be interpreted," the Court applied the *Blockburger* rule of statutory construction and held that each provision required proof of a fact that the other did not. *Id.* at 343, 101 S.Ct. at 1144. With respect to double jeopardy, the Court held:

> "[T]he role of the . . . [Double Jeopardy Clause] is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishment for the same offense." . . . Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.

*Id.* at 344, 101 S.Ct. at 1145, *citing Brown v. Ohio,* 432 U.S. at 165, 97 S.Ct. at 2225 (footnote omitted). Accordingly, the Supreme Court held that the charges for the single conspiracy were separately punishable.

An example of legislative intent not to punish separately may be found in *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), where the petitioner was convicted under the District of Columbia Code of both raping and killing the same victim in the perpetration of the rape. Congress had provided separate statutes with separate punishments for the offenses, but "[n]either statute . . . indicate[d] whether Congress authorized consecutive sentences where both statutes . . . [were] offended in a single criminal episode." *Id.* at 690, 100 S.Ct. at 1437. However, another section of the D.C.Code provided that a sentence for one offense would "run consecutively to any other sentence imposed . . . for conviction of an offense" which "*arises out of the same transaction and requires proof of a fact which the other does not.*" *Id.* at 691, 100 S.Ct. at 1437. In

other words, Congress adopted, in the D.C. Code, the *Blockburger* rule of statutory construction. Since it was necessary to prove all of the elements of rape in order to obtain a conviction for killing in the course of a rape, the Supreme Court concluded that Congress intended that the two offenses would not be punished separately. *Id.* at 690, 100 S.Ct. at 1437.

In *Albernaz,* the Supreme Court also recognized that sometimes the legislative intent with regard to concurrent or consecutive punishment might be ambiguous. In that case, the Court would apply a rule of lenity:

> "This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended."

450 U.S. at 342, 101 S.Ct. at 1144, *quoting Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958). In other words, where there is ambiguity as to the legislative intent, the accused gets the benefit of the doubt. On the other hand, where the statutes are unambiguous on their face and the legislative history is not to the contrary, the Supreme Court would not "manufacture ambiguity" in order to defeat the legislative intent. 450 U.S. at 342, 101 S.Ct. at 1144.

The interpretation placed on *Albernaz* is instructive. In *United States v. Greschner,* 647 F.2d 740 (7th Cir.1981), appellant was convicted of aggravated assault and knowingly conveying a weapon from place-to-place within a Federal prison, in violation of separate provisions of the United States Code, as a result of a prison altercation. The Court of Appeals succinctly rejected Greschner's contention that punishing him separately for both charges amounted to double jeopardy, because there was "no evidence of legislative intent to punish the crimes other than separately"; because "the elements of an assault charge . . . [were] different from the elements of the conveying charge"; and, *citing Blockburger*

and *Albernaz,* because "each crime require[d] proof of facts the other . . . [did] not." *Id.* at 744.

In *United States v. Khalje,* 658 F.2d 90 (2d Cir.1981), appellant presented an application for a visitor's visa to an American Consulate in which he assumed a false identity and falsely stated the purpose and length of his visit to the United States. For this act, he was convicted of both false personation and presentment of a visa application containing false statements, in violation of a single section of the United States Code. Applying *Albernaz,* the Court held that:

> [T]he personation provision clearly requires proof of a fact that the other does not, namely—false identity, while the presentment provision requires proof of knowing presentment of a false statement in an immigration *document.*

Id. at 92. Accordingly, the Court of Appeals held that the multiplicity challenge failed.

In *United States v. Colmenares-Hernandez,* 659 F.2d 39 (5th Cir.1981), *cert. denied,* 454 U.S. 1127, 102 S.Ct. 979, 71 L.Ed.2d 116 (1981), customs officials discovered a quantity of drugs in the appellant's possession upon his arrival at a United States international airport. He was convicted, *inter alia,* of and punished separately for both importation of the drugs and possession with intent to distribute, in violation of separate statutes. Applying *Blockburger* and *Albernaz,* the Court held that each offense required proof of a fact not required by the other offense. The importation charge required proof that the appellant brought the drugs to the United States, whereas possession with intent to distribute was proven by evidence that possession of such a quantity "obviated" personal use. Accordingly, the crimes were held to be "separately punishable." *Id.* at 43.

In *United States v. Alexandro,* 675 F.2d 34 (2d Cir.1982), appellant was convicted, *inter alia,* of conflict of interest and bribery, in connection with the investigation commonly known as "ABSCAM." Alexandro was an investigator for the Immigra-

tion and Naturalization Service, and he concocted a scheme, in return for payment, to fraudulently obtain a "green card" for an alien. The Court cited *Albernaz* for the "well-settled" proposition "that if Congress intended multiple punishments for the same act or transgression, imposition of such sentences is not a constitutional violation." *Id.* at 42. Applying *Blockburger,* the Court found that different facts were necessarily proven as to each offense. For conflict of interest it was necessary to prove "receipt of compensation 'otherwise than as provided by law for the proper discharge of official duties.'" Bribery, on the other hand, required proof of "receipt 'corruptly' and in return for being influenced," and "that the money is received in connection with an actual or contemplated official act or duty." *Id.* at 43 (footnote omitted). The critical difference going to intent, according to the Court, was that conflict of interest did "not require proof that compensation was 'corruptly' received or solicited as" bribery does. *Id.* Thus, multiple punishments were held to be proper.

I point out these cases to illustrate what I perceive to be the vast divergence of approach between our system and the Federal civilian criminal justice system. Many of these cases, I submit, would have been decided differently under our analysis. This, I believe, was not the result Congress intended when it enacted the Uniform Code of Military Justice. Article 36(a). The difference, it seems to me, is that the Federal courts strive to effectuate the will of the legislature. We, on the other hand, have attempted to create rules on an *ad hoc* basis to achieve what we believe to be a proper result in a given case. In the first place, as I have indicated, this is not our charter. In the second place, with each new rule we have established a precedent which has only compounded the confusion. It is evident that no single rule can be created which will adequately accommodate everyone's notion of justice in every situation. For this reason, I presume, Congress reposed in the courts-martial, convening authorities, and Courts of Military Review substantial discretion in imposing and approving sentences. Articles 56, 64, and 66, UCMJ, 10 U.S.C. §§ 856, 864, and 866, respectively. This Court, on the other hand, is limited to review for legal sufficiency approved sentences based upon the criteria established by Congress and the President. Article 67(d). Achieving justness in a given sentence is left to others—within the limits provided by Congress and the President.

In applying these principles to the instant case, our first task should be to ascertain the will of the Legislative and the Executive Branches. In that regard, I can find nothing in either the Uniform Code of Military Justice or the Manual for Courts-Martial, or their histories, which indicates congressional or presidential intention with respect to multiplicity for sentencing of aggravated assault and communication of a threat. In addition, I find nothing ambiguous about the description of the offenses, or any of their elements, such as to raise doubts as to whether Congress or the President intended them to be punished concurrently. Absent such indications, we should apply the rule of statutory construction provided by the President, *i.e.,* the "elements" or "Manual" test. Para. 76a(5), 1969 Manual, *supra;* para. 76a(8), 1951 Manual, *supra.* Applying this test to the instant case leaves no doubt whatever that appellant could be separately punished, for the offenses share *no* common elements. *Compare* para. 207c(1) *with* para. 213f(10), 1969 Manual, *supra.* Neither, therefore, is there a violation of double jeopardy. *Albernaz v. United States, supra* 450 U.S. at 343–44, 101 S.Ct. at 1144–45.

If such an approach be criticized as simplistic or mechanistic, which I must concede, it is this same simplicity and mechanism that chiefly commend it to me. Any of the other tests, it should be pointed out, are susceptible to equally mechanical application once the proper lever is somehow identified. In any event, I can find no authority in this Court to do otherwise.

Certainly such a system is susceptible to attempted manipulation by inventive and overzealous prosecutors. However, I am confident that military judges, convening

authorities, and the Courts of Military Review will not hesitate to take such measures as may be necessary to ensure a just result. The Federal civilian criminal justice system, it must be noted, also depends heavily upon the discretion of the District Judges and the United States Attorneys. In those rare instances in which this discretion is abused to such a shocking extent that due process of law has been infringed, no test would stand in the way of remedial action. *See United States v. Sturdivant*, 13 M.J. 323 (C.M.A. 1982).

Because I find neither constitutional nor statutory impediment to the imposition of separate punishments in the instant case, I would affirm the decision of the United States Army Court of Military Review.