UNITED STATES

v.

**Paul A. SMITH, 267 88 9606, Captain (O–3), U.S. Marine Corps.**

**NMCM 84 1675.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 27 Feb. 1984.

Decided 31 July 1984.

LTCOL M.W. Lucas, USMC, Appellate Defense Counsel

LT John B. Consevage, JAGC, USNR, Appellate Defense Counsel

MAJ E.D. Clark, USMC, Appellate Government Counsel

Before EOFF, MAY and RAPP, JJ.

RAPP, Judge:

At a general court-martial before military judge alone the appellant was convicted of conduct unbecoming an officer and a gentleman in violation of Article 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 933, by falsely claiming to be a duty officer; of adultery (two instances) in violation of Article 134, UCMJ, 10 U.S.C. § 934; and of fraternization with two subordinate enlisted women marines in violation of Article 134, UCMJ. Appellant has asserted three errors, all of which we reject.

The record of trial establishes that appellant, a former enlisted marine, a veteran of almost fourteen years' Marine Corps service, and married, was the supervisor of a sub-unit within Marine Air Control Squadron 4. Among his subordinates were Private First Class W and Lance Corporal S, both women marines.

At an on-base informal social event in October 1983 attended by both officer and enlisted persons of the appellant's unit he clasped Private First Class W's hand in the view of the assemblage and told her he wanted to get to know her better, and spend more time with her, euphemistic expressions suggesting a more intimate social relationship and so understood by both parties. Private First Class W declined any comment or commitment, and the following day the appellant apologized to her for his conduct.

Subsequently, in early December 1983 the appellant was present at a unit Christmas party attended by officers and enlisted personnel and invited Lance Corporal S (who was married to a marine stationed elsewhere) to meet with him at his BOQ room later in the evening. It was clear that personal matters, not official business, were the object. That invitation was withdrawn later in the evening by the appellant but on 12 December 1983, at work, he again extended such an invitation to Lance Corporal S. She complied, coming to his BOQ room in the late evening and the two had sexual intercourse there. On 16 December 1983 a similar sequence of events occurred; *i.e.*, invitation by appellant at work, visit to his BOQ room by Lance Corporal S in the evening, and sexual intercourse there by the two. On several occasions in late 1983 appellant professed his love to Lance Corporal S, and during the first week in December he gave her a silver necklace as a gift.

This unwholesome entanglement came to a clamorous end on the evening of December 1983. The appellant and Lance Corporal S were both present at a unit "Boss' Night" social function at an on-base facility. While sitting at a table with enlisted personnel the appellant wrote a "love note" on the back of his calling card (imprinted on the front with his name and rank), reached under the table, and slipped it into the shoe on Lance Corporal S's foot. Eventually a disagreement arose between the two because the appellant wanted Lance Corporal S to go with him outside to talk and she refused, instead retreating to the ladies' restroom. Despite entreaties dispatched to Lance Corporal S by the appellant via enlisted women messengers, Lance Corporal S refused to leave her sanctuary and the appellant departed. Later in the evening on at least three occasions the appellant telephoned Lance Corporal S's on-base quarters seeking her on the pretense of business and generally haranguing duty personnel there because they could not locate Lance Corporal S. When his phone calls did not succeed in reaching Lance Corporal S, appellant even went to her quarters in uniform claiming (falsely) to be in a duty status and asking for her. Lance Corporal S became extremely agitated by these developments and sought refuge in consuming alcoholic beverages and medications. She avoided the appellant by moving back and forth between her quarters and the enlisted club. Late in the evening she was telephoned by an acquaintance, another enlisted marine, who requested her assistance at the installation medical facility where the appellant was refusing medical treatment for testicular injuries suffered when kicked by his wife, until he talked with Lance Corporal S. Reluctantly Lance Corporal S went to the facility and met with the appellant but refused his request to "drive him home." During their meeting the appellant talked to her about his marital problems. In the presence of enlisted persons at the medical facility and while being taken to the BOQ after treatment, the appellant repeatedly proclaimed his longstanding love for Lance Corporal S. Early the next morning Lance Corporal S had to be hospitalized for an apparent suicide attempt through further ingestion of medication, but she did not suffer serious harm and was successfully treated.

Lance Corporal S asserted that she neither elicited nor desired the amorous attentions of the appellant. After unsuccessfully attempting to dissuade him from his passion and pursuit, she simply acquiesced to his desires because she was "scared" and concerned for jeopardizing her military advancement. The appellant, in contrast, characterized Lance Corporal S as a willing participant in the affair and blamed his actions on a relapse to acute alcoholism, although he admitted being in control of his actions and possessing adequate recollection when questioned about his degree of intoxication by the military judge during the providency inquiry.

I

SPECIFICATIONS 3 AND 4 OF CHARGE III FAIL TO ALLEGE VIO-

LATIONS OF THE UNIFORM CODE OF MILITARY JUSTICE.

█ We have no hesitation whatsoever in dismissing the appellant's allegations regarding the viability of the custom against wrongful fraternization in the Marine Corps and the legality of criminal charges resulting therefrom. Paragraph 213*b*, *Manual for Courts-Martial, 1969 (Rev.)* (MCM), removes any doubt that a "custom" can be the basis for criminal prosecution (the same as a regulation or statute) providing it meets specified standards. Additionally, military due process requires that a custom sufficiently define prohibited conduct.

█ This Court early in its existence reviewed the opposing considerations and concluded that wrongful fraternization was an offense under the UCMJ. *United States v. Free*, 14 CMR 466 (NBR 1953). The Court of Military Appeals, quoting liberally from this Court's opinion in *United States v. Free*, has supported that conclusion. *United States v. Pitasi*, 20 USCMA 601, 44 CMR 31 (1971). We need go no further than the Marine Corps Manual[1] to locate a custom against wrongful fraternization in the Marine Corps. Article 1100.4 thereof provides, *inter alia:*

> Relations Between Officers and Enlisted Marines. Duty relationships and social and business contacts among Marines of different grades will be consistent with traditional standards of good order and discipline and the mutual respect that has always existed between Marines of senior grade and those of lesser grade. Situations that invite or give the appearance of familiarity or undue informality among Marines of different grades will be avoided or, if found to exist, corrected.

This Court in 1953 acknowledged the above definition approvingly, *United States v. Free*, 14 CMR at 471, and we have been presented no evidence or persuasive rationale to doubt its continuing force. We de-

cline to accept appellant's bare assertion to the contrary.

█ Similarly, we reject the appellant's assertion that there was no "clear-cut general standard" for defining wrongful fraternization. *United States v. Free*, 14 CMR at 470, pointed out the "practical impossibility" of establishing a "measuring rod of particularities to determine in advance what acts are prejudicial to good order and discipline," as the exact circumstances can be crucial. A standard can be adequate, though not specifically delineating proscribed conduct, so long as it provides reasonable notice of requisite behavior. The Marine Corps Manual, we conclude, sets forth a practical definition in terms readily understood.

█ Turning to the particular facts of this case, we find the appellant's misconduct fitting squarely within the terms of Article 1100.4. What could be more *in*consistent with "traditional standards of good order and discipline" than public courtship of an enlisted subordinate by her superior officer consummated with adultery. The appellant's contention that his actions are defensible because committed while on liberty is neither an accurate statement of the facts nor a sound rationale. Instead, the stipulations of fact and testimony attached as exhibits show the appellant used the workplace to tell Lance Corporal S of his feelings toward her and to arrange nocturnal meetings which resulted in adultery. Furthermore, while much of the appellant's amatory quest was technically carried out during liberty hours, in actuality he was far from "off-duty," applying the normal connotation of that term to describe a status not involving military association. Instead, the record shows he was at unit social functions, the enlisted women's housing, and the base medical facility. Significantly, *all* the appellant's misconduct occurred on board a military installation, frequently in the presence of other unit personnel, both officer

---

1. This publication is issued in accordance with U.S. Navy Regulations, 1973, for the instruction and guidance of all persons in the Department of the Navy in matters concerning the Marine Corps and is approved by the Secretary of the Navy.

and enlisted. Under these circumstances we find that the appellant's misconduct was unequivocally to the prejudice of good order and discipline. Appellant's reliance on *United States v. Johanns*, 17 MJ 862 (AFCMR 1983), is totally misplaced. Not only was that case based on the lack of a determinable service custom but the facts involved an officer and enlisted member "not associated with one another in any way on duty." 17 MJ at 867. Accordingly, specifications 3 and 4 under Charge III state violations of the UCMJ.

## II

THE MILITARY JUDGE ERRED BY FAILING TO FIND THAT CHARGE III, SPECIFICATION 3 (FRATERNIZA-TION) IS MULTIPLICIOUS FOR FIND-INGS AND SENTENCING PURPOSES WITH CHARGE III, SPECIFICATIONS 1 AND 2 (ADULTERY).

█ In responding to the appellant's assertions of multiplicity, we start from the position that the wrongful fraternization offense involving Lance Corporal S and the two adultery offenses constitute one transaction. We base our premise on the understanding that the concept of "transaction" is flexible and "is generally construed to embrace a series of occurrences or an aggregate of acts which are logically related to a single course of criminal conduct." *United States v. Baker*, 14 MJ 361 (CMA 1983). The acts of adultery, while not essential to the wrongful fraternization charge, made a substantial contribution to it and were possibly the incentive for the appellant's courting of Lance Corporal S. Thus, a single course of criminal conduct is evident.

█ An accused can, however, be lawfully convicted of multiple offenses arising out of a single transaction. Paragraph 74*b* (4), MCM. *United States v. Baker* has provided us with a schematic for analysis of this issue. 14 MJ at 367–68. Of particular concern is the determination whether the adulteries and the wrongful fraternization stand in the relation of greater and lesser offenses. *United States v. Baker*,

14 MJ at 368, used a two-step process for this determination:

> Assuming both offenses arise out of one transaction, one offense may be a lesser-included offense of another offense in two situations: First, where one offense contains only elements of, but not all the elements of the other offense; second, where one offense contains different elements as a matter of law from the other offense, but these different elements are fairly embraced in the factual allegations of the other offense and established by evidence introduced at trial.

We can readily discern that neither of the two offenses in question contains "only elements of, but not all the elements of the other offense," as they share only the one element common to all Article 134, UCMJ, offenses, in contrast to several diverse elements. The second step of the process is not so quickly dealt with. After scrutiny of the allegations in support of the wrongful fraternization offense, however, we are convinced that the different elements of the adultery offenses are not "fairly embraced" therein. In reaching this conclusion we have been guided by *United States v. Duggan*, 4 USCMA 396, 15 CMR 396 (1954), upon which the Court of Military Appeals relied for the method of analysis employed in *United States v. Baker*. The definition of a lesser included offense developed by *United States v. Duggan*, 15 CMR at 400, requires not only that the specification of the greater offense "alleges fairly ... all elements of both crimes," but also that "both offenses are substantially the same kind." Although the two adultery specifications and one of the wrongful fraternization specifications allege sexual intercourse between the appellant and Lance Corporal S, the two classes of offenses are not at all the "same kind." Adultery is dependent upon violation of the marital union. Wrongful fraternization, in contrast, involves interference with good order and discipline as essential factors in the preservation of military authority. Thus, the adulteries are not included in the

wrongful fraternization, and separate findings can properly stand.

 In determining whether the offenses in question are multiplicious for sentencing we are again guided by *United States v. Baker,* 14 MJ at 368–70, as well as by paragraph 76a (5), MCM. As we have discussed above, the adultery offenses and the wrongful fraternization offense involving Lance Corporal S do not stand in the relation of greater and lesser offenses. Further, we see no reasonable basis for concluding that the appellant was acting under a single impulse or intent. The facts could support varying interpretations of his intent, and the lengthy period of time encompassing the wrongful fraternization offered him ample opportunity to change his intent or desist entirely from his adultery. Lastly, two disparate social standards were violated. On the one hand the law seeks to protect the marital union, while on the other the goal is preservation of military authority. As a result, the adultery offenses are not multiplicious for sentencing with the wrongful fraternization offense involving Lance Corporal S.

### III

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED BY INCORRECTLY DETERMINING THE MAXIMUM PERMISSIBLE CONFINEMENT TO BE AWARDED IN THIS CASE.

We see no need to belabor the precise maximum confinement which could have been awarded to the appellant. The military judge thoroughly reviewed with him the differences in theories regarding the computation of the maximum confinement at hard labor and his own counsel called attention to this "grey area." The appellant nevertheless persisted in his guilty pleas. As a result we find that he could not have suffered any substantial misunderstanding to his disadvantage. *See United States v. Hedlund,* 7 MJ 271 (CMA 1979). Furthermore, the appellant by pretrial agreement had severely limited the maximum confinement at hard labor he could be required to serve under any eventuality, and even the relatively small amount of that punishment awarded by the military judge was disapproved by the convening authority without imposition upon the appellant. Thus, we see no "ignorance of the possible consequences of his guilty plea," and we determine that appellant's plea was provident. *See United States v. Hedlund, supra* at 273.

Accordingly, the findings of guilty and the sentence as approved on review below, are affirmed.

Chief Judge EOFF and Judge MAY concur.