# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
POND, WALKER, and PARKER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Private E2 OSCAR A. BATRES**
**United States Army, Appellant**

ARMY 20220223

Headquarters, 82nd Airborne Division
Travis Rogers and G. Bret Batdorff, Military Judges
Colonel Jeffrey S. Thurnher, Staff Judge Advocate

For Appellant: Colonel Michael C. Friess, JA; Major Mitchell D. Herniak, JA; Captain Matthew S. Fields, JA (on brief); Major Mitchell D. Herniak, JA; Captain Matthew S. Fields, JA (on reply brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Captain Matthew S. Fields, JA (on brief on specified issues).

For Appellee: Lieutenant Colonel Jacqueline DeGaine, JA; Major Timothy R. Emmons, JA; Major Andrew M. Hopkins, JA (on brief); Colonel Christopher B. Burgess, JA; Major Chase C. Cleveland, JA; Captain Stewart A. Miller, JA (on brief on specified issues).

23 August 2024

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

POND, Chief Judge:

Appellant was convicted of two specifications of sexual assault and one specification of assault consummated by a battery involving the same victim. The sexual assaults occurred simultaneously by appellant penetrating the victim's vagina (appellant was convicted of this offense as a principal) while another soldier, Specialist (SPC) ███, penetrated the victim's mouth (appellant was convicted of this offense as an aider and abettor). During the sexual assault, appellant grabbed the victim's face with his hand, which constituted the assault consummated by a battery.

A military judge sentenced appellant to a term of confinement for each offense and ordered that the terms of confinement run consecutively. On appeal, this court specified the issue of whether appellant's offenses involved the same victim and the same act or transaction under Rule for Courts-Martial 1002(d)(2)(B)(i) such that the military judge was required to order appellant's sentences to run concurrently. We hold that the military judge did not err and affirm.[1]

## BACKGROUND

Appellant and the victim met while waiting in line at a Walmart on 2 July 2021 and in the following two days developed a sexual relationship. On the third day, appellant invited the victim to a Fourth of July party. While at the party, appellant and the victim were introduced to SPC ███. After a few hours, appellant and the victim left (as well as SPC ███) and went to another party, this one at the barracks. While at this second party, SPC ███ and another soldier interrupted appellant and the victim having sex. Appellant and the victim got dressed and then left with SPC PN and some other soldiers to watch fireworks. After watching the fireworks, the group returned to the location of the first party to retrieve the victim's identification (ID) from her car and call a taxi to go to a local club.

When they arrived at the location of the first party, appellant and the victim separated from the others as they walked towards her car and then began having consensual sex against the driver's side of the car. Curious as to what was taking so long to retrieve the victim's ID, SPC ███ also walked towards the car. Once he saw appellant and the victim having sex, he turned to walk away but then heard appellant say, "[c]ome on, join in, man." At first, SPC ███ hesitated but then he walked towards appellant and the victim. The victim then told appellant, "I did not ask for this, I didn't agree to this." The victim testified that appellant grabbed her face and told the victim to "shut up." While appellant continued sexual intercourse with the victim, he pushed the victim's head toward SPC ███'s penis and told her to "take it," and SPC ███'s penis penetrated the victim's mouth. After a few minutes, appellant, with the help of SPC ███, placed the victim on her back in the back seat of the car. SPC ███ then had sex with the victim. While this occurred, appellant walked around to the other side of the car, opened the driver's side back door, and then closed it. Despite the victim again stating that this was not what she wanted, SPC ███

---

[1] We have given full and fair consideration to appellant's other assignments of error, to include matters submitted personally by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find they lack merit and warrant neither additional discussion nor relief.

continued to sexually assault the victim until he ejaculated. Once SPC ▉ finished, the victim started crying and repeating that this was not what she wanted.

A few moments later, the two other soldiers from the group approached. One of the soldiers tapped SPC ▉ on the shoulder and asked about the taxi to take them to the club. Specialist ▉ pulled up his pants and stated, "I'm sorry. Hit me," and began crying. Another soldier walked over to appellant, who was leaning into the car with his pants down to his ankles, and pulled on appellant's shoulder. Appellant and SPC ▉ then called 911 and reported themselves to law enforcement. Appellant sent a text message to the victim the following day and apologized, telling her, "I'm truly sorry for what happened if I can go back and prevent it I would."

On 5 May 2022, an enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of sexual assault and one specification of assault consummated by a battery, in violation of Articles 120 and 128, Uniform Code of Military Justice, 10 U.S.C. §§920 and 928 [UCMJ].[2] A military judge sentenced appellant to a dishonorable discharge, twenty months of confinement for each specification of sexual assault, and six months of confinement for the assault consummated by a battery. The military judge ordered all terms of confinement to run consecutively, thereby sentencing appellant to a total of forty-six months of confinement. Prior to the military judge's announcement of the sentence, neither party raised the issue to the court of whether the segmented sentences should run consecutively or concurrently, and no party raised an objection after the sentence was announced. On 10 August 2022, the convening authority took no action on the findings or the adjudged sentence.

## LAW AND DISCUSSION

We address whether the military judge erred in ordering that appellant's terms of confinement run consecutively given the limitations outlined in Rule for Courts-Martial [R.C.M.] 1002(d)(2)(B).

### Statutory Requirements for Sentencing

Article 56, UCMJ, governs court-martial sentencing. It provides that "a court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces, taking into consideration" several factors. UCMJ art. 56(c)(1)(2019), 10 U.S.C. § 856(c)(1) (2018). The statute also requires a military judge to specify a

---

[2] The panel acquitted appellant of one specification of sexual assault, in violation of Article 120, UCMJ.

term of confinement, if any, for each offense and when an accused is sentenced to confinement for more than one offense, the statute requires the military judge to "specify whether the terms of confinement are to run consecutively or concurrently." UCMJ art. 56(c)(2)(2019).[3]

This sentencing scheme – requiring a term of confinement for each offense – is referred to as segmented sentencing and was part of sweeping changes to the UCMJ enacted by Congress in the Military Justice Act of 2016. National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 5001-5542, 130 Stat. 2000 (2016). Those statutory changes adopted many of the legislative recommendations by the Military Justice Review Group. Military Justice Review Group, Report of the Military Justice Review Group: Part I: UCMJ Recommendations (2015) (MJRG Report).[4] Prior to these statutory changes, courts-Martial adjudged a unitary sentence, that is, a single sentence for all offenses of which an accused was convicted. *See e.g,* R.C.M. 1002(b) (2016 ed.) The MJRG report recommended amending Article 56, UCMJ, to replace unitary sentencing with segmented sentencing. MJRG Report at 509. The report acknowledged, "[s]egmented sentencing requires protections to ensure that an accused is not unfairly sentenced twice for what is essentially one offense" and "[i]f the offenses involved the same transaction, victim, and harm, the sentence would be overly severe for what was essentially one criminal act." *Id* at 510.

The MJRG's recommendation was "rooted in the federal system, where federal district courts generally have broad discretion to impose a consecutive or concurrent sentence." *Id.* But the report acknowledged that a federal judge's sentencing discretion is limited by the consideration of factors outlined in 18 U.S.C.

---

[3] Congress amended Article 56, UCMJ, in the National Defense Authorization Act for Fiscal Year 2022 (NDAA22) to require military judges to impose sentences within sentencing parameters established by the President. Pub. L. No. 117-81, 135 Stat. 1541, 1702 (2021). The statute, however, still requires military judges to specify whether terms of confinement are to run consecutively or concurrently when the accused is sentenced to confinement for more than one offense. 10 U.S.C. § 856 (2024).

[4] On 18 October 2013, Secretary Hagel directed the Department of Defense General Counsel to conduct a comprehensive review of the UCMJ and the military justice system. The report was completed on 22 December 2015. Mil. Just. Rev. Group, Report of the Military Justice Review Group: Part I: UCMJ Recommendations (2015).

§3553(a)[5] along with applicable federal sentencing guidelines or policy statements issued by the Sentencing Commission. *Id*. at 510, n.40.

Congress adopted the MJRG's recommendation. Article 56(c), UCMJ, now requires segmented sentencing when an accused elects to be sentenced by a military judge and mandates that the court-martial consider many of the same factors outlined in 18 U.S.C. §3553(a) in determining an appropriate sentence.[6]

*Presidential Rules on Sentencing*

Rule for Courts-Martial 1002 implements Article 56, UCMJ, and reflects the President's authority under Article 36, UCMJ, to promulgate rules on sentencing. *Manual for Courts-Martial, United States* (2019 ed.) [MCM]. It begins by stating that any sentence imposed is "within the discretion of the court-martial" but "[s]ubject to the limitations" of the MCM. R.C.M. 1002(a). When a sentence includes more than one term of confinement, the rule prescribes that "the military judge *shall* state whether the term of confinement is to run concurrently or consecutively with any other terms of confinement." R.C.M. 1002(d)(2)(B) (emphasis added). Additionally, the Discussion to R.C.M. 1002(d)(2)(B) states military judges "may exercise broad discretion in determining whether terms of

---

[5] When determining an appropriate sentence, this statute requires the court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) deterrence to criminal conduct; (4) protection of the public from further crimes of the defendant; (5) the need to effectively provide the defendant with needed educational or vocational training, medical care, or other treatment; (6) the kinds of sentences available; (7) sentencing guidelines and policy statements of the Sentencing Commission; (8) the need to avoid unwarranted sentence disparities among defendants with similar records and convicted of similar conduct; and (9) the need to provide restitution to the victims of any offense. 18 U.S.C. §3553(a).

[6] In sentencing an accused, Article 56, UCMJ, requires a court-martial to consider: (1) the nature and circumstances of the offense and history and characteristics of the accused; (2) the impact on the victim and the impact on the mission, discipline, and efficiency of the command of the accused and the victim; (3) and the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to promote adequate deterrence of misconduct, to protect others from further crimes by the accused, to rehabilitate the accused, and in appropriate cases, to provide the opportunity for retraining and return to duty. These factors are also outlined in R.C.M. 1002(f).

confinement will run concurrently or consecutively consistent with R.C.M. 1002(f)."[7] But the President limited that broad discretion in R.C.M. 1002(d)(2)(B)(i)-(v), the rule applicable to appellant's court-martial, by providing that "terms of confinement for two or more specifications *shall* run concurrently" in the following circumstances:

(i)     when each specification involves the same victim and the same act or transaction;

(ii)    when provided for in a plea agreement;

(iii)   when the accused is found guilty of two or more specifications and the military judge finds that the charges are unreasonably multiplied; or

(iv)    when otherwise appropriate under subsection (f); or

(v)     in a special court-martial, to the extent necessary to reduce the total confinement to the maximum confinement authorized under R.C.M. 201(f)(2).

R.C.M. 1002(d)(2)(B), MCM (2019 ed.) (emphasis added).[8]

At issue in this case is the first provision which requires that two or more specifications must run concurrently when each specification involves the same victim and the same act or transaction. R.C.M. 1002(d)(2)(B)(i).

*Standard of Review*

"The interpretation of provisions of the R.C.M. . . .are questions of law that we review de novo." *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008). But where appellant fails to raise an issue at trial, this court reviews for plain error. *See United States v. Davis*, 75 M.J. 537, 542 (Army Ct. Crim. App. 2015) (stating "a de novo review and plain error are not mutually exclusive"). Under a plain error review, appellant must show (1) there was error; (2) the error was clear or obvious;

---

[7] The Discussion sections of the Rules for Courts-Martial "are not binding but instead serve as guidance." *United States v. Chandler*, 80 M.J. 425, 429 n.2 (C.A.A.F. 2021); *see also MCM,* pt. 1, ¶ 4, Discussion (2019 ed.) ("These supplementary materials" which include Discussions promulgated by the President "do not have the force of law").

[8] Following the changes to Article 56 enacted by the NDAA22, the President amended R.C.M. 1002 to remove this language, effective 27 December 2023. Exec. Order No. 14103, 28 July 2023.

and (3) the error materially prejudiced a substantial right of the appellant. *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018).

In interpreting the R.C.M., "[o]rdinary rules of statutory construction apply." *Hunter*, 65 M.J. at 401) (citation omitted). "As in all statutory construction cases, we begin with the language" of the rule and determine whether the language "has a plain and unambiguous meaning." *United States v. McPhearson*, 73 M.J. 393, 395 (C.A.A.F. 2014) (quoting *Barnhart v. Sigmon Coal Co. Inc.*, 534 U.S. 438, 450, 122 S. Ct. 941 (2002)). "The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.*; *see also United States v. Custis*, 65 M.J. 366, 370 (C.A.A.F. 2007) (citation omitted) (If the "[l]anguage is plain, the sole function of the courts . . . is to enforce it according to its terms."). Only when the plain language "[remains] unclear, [does the court] look next to the legislative history." *United States v. Sager*, 76 M.J. 158, 161 (C.A.A.F. 2017) (citation omitted).

"In any such analysis, this court 'should . . . give meaning to each word'" so as not to ignore a word, cause it to duplicate another provision, or have no consequence. *Sager*, 76 M.J. at 161 (quoting *United States v. Adcock*, 65 M.J. 18, 24 (C.A.A.F. 2007)).

### Same Victim and the Same Act or Transaction

As a preliminary matter, we address whether the language in R.C.M. 1002(b)(2)(B)(i) is merely a codification of the prohibition against multiplicity, as the government argues. We conclude it is not. We disagree this provision is merely a restatement of the constitutional and statutory prohibitions against double jeopardy, barring multiple prosecutions and multiple punishments "for the same offense." U.S. Const. amend. V; UCMJ art. 44(a); *see also United States v. Forrester*, 76 M.J. 479, 484 (C.A.A.F. 2017). As our superior court recognized, "[a]s a matter of logic and law, if an offense is multiplicious for sentencing it must necessarily be multiplicious for findings as well." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). Our superior court went on to state that it ". . .is confusing to refer to 'multiplicity for sentencing' as a distinct concept since a ruling that an offense is 'multiplicious' for findings purposes necessarily results in dismissal of the multiplied offense and obviates any issue on sentencing." *Id.* Thus, the remedy for multiplicity would obviate the need for R.C.M. 1002(d)(2)(B)(i) because the offense would already be dismissed. Multiplicity is waivable, *see United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009), but it is more likely for situations to arise where offenses are not multiplicious–that is, the elements of one offense are not a subset of elements of the other offense–and yet, the offenses still

involve the same victim and the same act or transaction.[9] Thus, the rule cannot merely be a codification of the jurisprudence governing multiplicity.

In determining whether the military judge erred by adjudging consecutive sentences, we must decide whether appellant's offenses involved the same act *or* transaction. In R.C.M. 1002(d)(2)(B)(i), the word act and transaction are separated by the disjunctive "or." Words connected by a disjunctive should ordinarily "be given separate meanings, unless the context dictates otherwise." *Sager*, 76 M.J. at 161 (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). The parties agree that appellant's offenses involve the same victim and agree that appellant's offenses involve separate acts. The parties, however, disagree on the issue of whether appellant's offenses involve the same *transaction*. The Government focuses on the actus reus of each of appellant's offenses and asserts each constitutes a separate and distinct act but does not address the issue of whether each offense involves a separate transaction. Appellant focuses on the word transaction and argues that the Government erroneously limited its focus to the actus reus of appellant's offenses. Appellant argues that his three convictions involve one transaction, even if they comprised different criminal acts, and thereby fall within the mandate of R.C.M. 1002(d)(B)(2)(i) for concurrent sentences.

First, we look to the plain meaning of "act" and "transaction" under R.C.M. 1002(d)(2)(B)(i). Under the plain language of the rule, there is nothing seemingly ambiguous about the term "act." An "act" is defined as "the doing of a thing." Webster's Third New International Dictionary 20 (2002). And "something done or performed." Black's Law Dictionary 27 (9th ed. 2009). Appellant was convicted of two specifications of sexual assault which require a sexual *act*. Article 120(b), UCMJ. Specifically, appellant was convicted of penetrating the victim's vulva with his penis and penetrating the victim's mouth with another person's penis. The statute defines a sexual act in multiple ways, including "the penetration, however slight, of the penis into the vulva or anus or mouth." Article 120(g), UCMJ. Webster's definition of "act," along with the relevant statutory definition, make clear that each instance of penetration of the vulva, anus, or mouth is a separate act. Transaction, on the other hand, is defined as "the act or an instance of conducting business or other dealings," or "something performed or carried out; business agreement or exchange" as well as "any activity involving two or more persons."

---

[9] To determine whether one offense is multiplicious of another, our superior court in *United States v. Teters*, 37 M.J. 370, 377 (C.M.A. 1993), adopted the separate elements test articulated by the Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). This test involves three parts, including an analysis of whether each statute requires proof of an element not contained in the other. *See United States v. Coleman*, 79 M.J. 100, 103 (C.A.A.F. 2019).

Black's Law Dictionary 1653 (9th ed. 2009). To give each word meaning, "act" would constitute conduct done by a single person, whereas "transaction" would constitute an activity or an exchange between two or more people, or a series of occurrences or an aggregate of acts making up one "transaction," as distinct from a course of criminal conduct which could be made up of many different acts or transactions. But because this definition is far from clear, especially as applied to appellant's case, caselaw and legislative history may be instructive.

The dissent relies on *United States v. Baker*, where the court defined "transaction" as "generally construed to embrace a series of occurrences or an aggregate of acts which are logically related to a single course of criminal conduct." 14 M.J. 361, 366 (C.M.A. 1983). This decision is insightful but not dispositive in interpreting R.C.M. 1002(d)(2)(B)(i). First, the court in *Baker* was interpreting the rule against unreasonable multiplication of charges from the 1969 Manual, which stated: "One transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person."[10] Unreasonable multiplication of charges is a separate basis for which terms to confinement "shall" be concurrent under R.C.M. 1002(d)(2)(B)(iii).[11] In defining transaction, the *Baker* court cited to three secondary sources. *Baker*, 14 M.J. at 366 (citing Moore's Federal Practice section 8.07[2]; Wright, Federal Practice and Procedure, (1969) section 143; 1 Bishop, A Treatise on Criminal Law section 777 (9th ed. 1923)).

One of those cited sources, Moore's Federal Practice section 8.07[2], was defining "transaction" under Federal Rule of Criminal Procedure (Fed. R. Crim. Proc.) 8 governing joinder. The 2024 version of Moore's Federal Practice reflects a flexible definition of "transaction" in the context of Fed. R. Crim. Proc. 8:

> The terms "act" and "transaction" have been accorded fairly flexible, nontechnical definitions. Thus, resolving claims of misjoinder under the "same act or transaction" test usually involves a careful consideration of the facts of the case rather than an interpretation of law. Studying the types of fact patterns in which joinder has been upheld is helpful, but it is important to remember that each case will turn on its own facts, and no strict rules can be drawn.

---

[10] This language remains mostly unchanged in R.C.M. 307(c)(4). *MCM* 2019.

[11] No one appears to argue that appellant's conviction for sexual assault as a principal and sexual assault as an aider and abettor are an unreasonable multiplication of charges.

24 Moore's Federal Practice – Federal Rules of Criminal Procedure § 608.02 (2024).

Similarly, Bishop's A Treatise on Criminal Law, also cited in *Baker,* indicates a flexible definition of transaction which might include a singular occurrence as well as a series of occurrences or an aggregate of acts.[12]   Even the court in *Baker* acknowledged that "the word transaction is flexible in meaning." *Baker*, 14 M.J. at 365.

To determine whether the offenses at issue arose from the same transaction, the *Baker* court applied a "single impulse" test, relied upon by the dissent.  But since the *Baker* decision, courts have moved away from using the "single impulse or intent" test to determine whether relief is warranted for unreasonable multiplication and have adopted the *Quiroz* factors "which offer greater clarity." *Campbell*, 71 M.J. at 24.[13]   Thus, we question whether the "single impulse" test is the appropriate lens through which this court should interpret the "same act or transaction."

---

[12] In one passage, the treatise states, "a man may commit more crimes than one in a single transaction" such as "if he discharges a loaded gun at one whom he intends to kill, but accidentally the ball passes by and takes the life of another, he has murdered the latter, and made an assault on the former with the intent to kill him." Bishop, page 671.  Yet, in another section, the treatise explains that when a thief, after carrying away a stolen good, comes back two minutes later for a second, and thirty minutes later for a third, the court ruled that the taking of the first two might be regarded as one transaction but the larceny of a third was a separate offense – though "the question is not to be determined by the number of minutes or hours intervening, but by the nature of the transaction and the special facts." *Id.* at 673.

[13] For a trial court, the *Quiroz* factors include, but are not limited to the following:

> (1) whether each charge and specification is aimed at distinctly separate criminal acts,
> (2) whether the number of charges and specifications misrepresent or exaggerate the accused's criminality,
> (3) whether the number of charges and specifications unreasonably increase the accused's punitive exposure, or
> (4) whether there is any evidence of prosecutorial overreaching or abuse in the drafting of the charges.

*Campbell*, 71 M.J. at 24 (C.A.A.F. 2012) (citing *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001)).

The language in R.C.M. 1002(d)(2)(B)(i) is found verbatim in the United States Sentencing Guidelines (Sentencing Guidelines), which were referenced in the MJRG's recommendation on revisions to Article 56 to require segmented sentencing when sentenced by a military judge. MJRG Report at 510 n.40. The Sentencing Guidelines instruct District courts that "[a]ll counts involving 'substantially the same harm' shall be grouped together into a single group" in four circumstances. United States Sentencing Guidelines (U.S.S.G.) §3D1.2. One of those four circumstances include when the counts "involve the same victim and the same act or transaction." U.S.S.G. §3D1.2(a).

In light of this, federal caselaw may be insightful but not necessarily dispositive in interpreting R.C.M. 1002(d)(2)(B) because the federal sentencing guidelines require federal courts to group offenses in four situations, of which the military adopted only one. The President omitted from R.C.M. 1002 mention of the other three situations requiring grouping under the federal sentencing guidelines, including "[w]hen counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan." U.S.S.G. §3D1.2(b). The omission of this second category further highlights the narrower scope of "same victim and same act or transaction" under R.C.M. 1002(d)(2)(B)(i), which omits any reference to common intent, objective, scheme, or plan. Further, federal courts may deviate from the sentencing range of grouped offenses under certain conditions. U.S.S.G. §3D1.2, application note 8. And in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the Supreme Court held the Sentencing Guidelines were advisory and "instructed appellate courts to review sentences for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a)." *United States v. Locke*, 664 F.3d 353, 356, 398 U.S. App. D.C. 368 (D.C. Cir. 2011) (citations omitted). Many of the factors in 18 U.S.C. § 3553(a) are now incorporated in R.C.M. 1002(f). Since *Booker,* federal courts apply slightly different standards of review to sentencing guidelines errors, but all incorporate reasonableness.[14]

---

[14] *See e.g., United States v. Figueroa-Ocasio*, 805 F.3d 360, 372 (1st Cir. 2015) (reviewing the reasonableness of criminal sentences for an abuse of discretion in a bifurcated review: first determining whether the sentence is procedurally reasonable (i.e., whether the district court properly calculated the sentencing range) and second determining whether the sentence is substantively reasonable); *United States v. McCrimon*, 788 F.3d 75, 78 (2d Cir. 2015) (stating "We review a sentence procedural and substantive reasonableness, which is akin to a 'deferential abuse-of-discretion standard.'"; *United States v. Naidoo*, 995 F.3d 367, 382 (5th Cir. 2021) (stating when "reviewing the procedural reasonableness of a sentence, we review the district court's "interpretation and application of the Sentencing Guidelines de novo and its findings of fact for clear error"); *United States v. Perez*, 943 F.3d 1329,

(continued . . .)

From the MJRG Report, it would appear the intent of R.C.M. 1002(d)(2)(B) is to ensure an accused's sentence is not "overly severe for what was essentially one criminal act." MJRG Report at 510. Under the federal sentencing guidelines, the intent of grouping offenses in federal court is for a similar reason. The 6th Circuit noted the sentencing guidelines reflect an attempt to strike the balance between providing "incremental punishment for meaningfully different criminal conduct" on the one hand and on the other, avoiding "punishing the defendant two (or more) times for 'substantially identical' conduct" which can occur if the judge relies only on the "prosecutor's charging decision." *United States v. Bivens*, 811 F.3d 840, 843 (6th Cir. 2016) (citation omitted). The "'grouping' rules seek to strike that balance" by requiring the "court to group together all counts that 'involv[e] substantially the same harm.'" *Id.* (citation omitted).

With that rubric in mind, whether offenses involved the same act or transaction under R.C.M. 1002(d)(2)(B)(i) is a question of whether the offenses involved substantially the same harm. We review the military judge's finding under R.C.M. 1002(d)(2)(B)(i) for reasonableness. Applying a reasonableness standard to this provision aligns with the discretion afforded military judges to determine an appropriate sentence as well as the "broad discretion" to determine whether terms of confinement should be concurrent or consecutive; it acknowledges the flexible definition of the term "transaction;" it is consistent with federal practice.[15] It also parallels R.C.M. 1002(d)(2)(B)(iii), which similarly applies a doctrine or "legal standard of reasonableness" to determine whether offenses have been unreasonably multiplied. *United States v. Quiroz*, 55 M.J. 334, 339-40 (C.A.A.F. 2001) ("Reasonableness, like sentence appropriateness, is a concept that the Courts of Criminal Appeals are fully capable of applying").

---

(. . . continued)
1332-33 (11th Cir. 2019) (stating the court reviews "the district court's application of the Sentencing Guidelines *de novo*" which "entails a *de novo* review of the legal standard, a clear-error review of the district court's findings of fact, and a *de novo* review of the district court's application of the legal standard and the Sentencing Guidelines to those facts.")

[15] We acknowledge the application of the reasonableness standard to all the provisions of the Federal Sentencing Guidelines was a result of the Supreme Court's declination to sever parts of the statute that they found unconstitutional from the parts that passed scrutiny, whereas in this case the President has only incorporated one phrase which does not implicate the 6th Amendment. *See generally Booker*, 543 U.S. 220.

In appellant's case, the military judge reasonably could have found that appellant's nonconsensual penetration of the victim's vulva with his penis was *not* substantially the same harm as penetrating the victim's mouth with the penis of another person without her consent even though the acts may have occurred simultaneously. That is, it was reasonable for the judge to conclude that being sexually assaulted by appellant was a substantially different harm from being sexually assaulted by SPC ███. While the timing of the offenses is relevant, it is neither the sole nor the most important consideration. The critical question is whether the harm caused by one offense is substantially the same harm caused by another offense. By making the terms of confinement consecutive, the military judge inherently found appellant's two offenses caused separate and distinct instances of harm to the victim, a finding that is reasonable under the facts of appellant's case. The reasonableness of the military judge's finding is further highlighted by caselaw hinging on the identity of sexual partners and the important distinction of penetration of a victim by one person from penetration of the victim by a different person. *See United States v. Traylor*, 40 M.J. 248 (C.M.A. 1994). The assault consummated by a battery is a closer case, but because appellant did not raise the issue at trial, even if it was error, the error was not plain and obvious.

We also note that 46 months of confinement – the total sentence for all three sentences of appellant's convictions served consecutively – is well below the 30-year maximum for a single sexual assault offense in violation of Article 120, UCMJ. Moreover, whether the sentences for appellant's convictions were served concurrently or consecutively, ultimately, in fashioning an overall sentence, the military judge was required to adjudge a sentence that, in total, was "sufficient, but *not greater than necessary*, to promote justice and to maintain good order and discipline in the armed forces, taking into consideration" the factors in R.C.M. 1002(f). R.C.M. 1002(f) (emphasis added). The record does not indicate the military judge did otherwise.

## CONCLUSION

The findings and sentence are AFFIRMED[16].

Judge PARKER concurs.

---

[16] Block 8 of the Statement of Trial Results, as incorporated into the Judgment of the Court, is amended to reflect a response of "Enlisted Panel."

WALKER, Senior Judge, dissenting:

This case raises a novel issue not before addressed by this court: what constitutes the same *act or transaction* requiring a military judge to order that two or more terms of confinement run concurrently as mandated by R.C.M. 1002(d)(2)(B)(i). While appellant did not challenge the military judge's imposition of consecutive sentences at trial, nor on appeal, this court found the issue compelling enough to specify the issue given the facts underlying the offenses of which appellant was convicted.

I respectfully dissent and find that the military judge erred in imposing consecutive terms of confinement. Specifically, I find the military judge violated the mandate in R.C.M. 1002(d)(2)(B)(i) by imposing consecutive terms of confinement for offenses which involved the same victim and the same *transaction*.

### Presidential Restriction of Military Judge's Sentencing Discretion

As the majority correctly notes, Rule for Courts-martial 1002 implements Article 56, UCMJ, and reflects the President's authority under Article 36, UCMJ, to promulgate rules on sentencing. It begins by stating that any sentence imposed is "within the discretion of the court-martial" but "[s]ubject to the limitations" of the Manual for Courts-martial. R.C.M. 1002(a). The rule goes on to mandate that terms of confinement for two or more specifications *shall* run concurrently in five situations, one of those being "when each specification involves the same victim and the *same act or transaction*." R.C.M. 1002(d)(2)(B)(i) (emphasis added). Thus, while the military judge generally has broad discretion in determining whether sentences for two or more offenses should run concurrently or consecutively, the President has chosen to restrict that discretion in the circumstances outlined in R.C.M. 1002(d)(2)(B). I do not subscribe to the notion that the military judge retains discretion in determining whether multiple terms of confinement should run concurrently if any one of the circumstances outlined in R.C.M. 1002(d)(2)(B) arise in a case given the mandate of *shall*. While the majority cites to the Discussion to R.C.M. 1002(d)(2)(B) which states the military judge may exercise broad discretion in determining whether sentences will run concurrently or consecutively, the majority also properly notes that the Discussion sections of the rules are not binding. I find that the broad discretion afforded the military judge only applies in circumstances which do not fall within the confines of R.C.M. 1002(d)((2)(B).

### Interpreting Same Act or Transaction

As an initial matter, I agree with the majority that the language in R.C.M. 1002(b)(2)(B)(i) is not merely a codification of the prohibition against multiplicity for the same reasons cited by the majority. The only form of multiplicity is that which protects against double jeopardy by analyzing the elements of each charged

offense in context with the facts alleged. *Blockburger v. United States*, 284 U.S. 299, 52 (1932);[17] *United States v. Teters*, 37 M.J. 370 (C.A.A.F. 1993). As noted by the majority, ". . . a ruling that an offense is 'multiplicious' for findings purposes necessarily results in dismissal of the multiplied offense and obviates any issue on sentencing." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012).

At issue in this case is the provision which requires that two or more terms of confinement must run concurrently when each specification involves the same victim and *the same act or transaction*. R.C.M. 1002(d)(2)(B)(i). In applying the ordinary rules of statutory construction, I find no ambiguity as to the term "act." I concur with the majority that given the definition of "act" and the definition of sexual act in Article 120(b), UCMJ, that each instance of penetration of the vulva, anus, or mouth is a separate act. The word transaction, however, is not as easily defined. I concur with the definition of transaction as provided by the majority that a transaction might include one individual, or it might include an exchange between two or more people. The plain meaning of the word *transaction* appears to include more than just a distinct act, but rather, an entire process or encounter. Given the ambiguity in determining what constitutes a *transaction*, both case law and the statutory history of R.C.M. 1002(d)(2)(B)(i) provide guidance.

In addressing the issue of unreasonable multiplication of charges, our superior court has stated, "[a]lthough the word *transaction* is *flexible* in meaning, it is generally construed to embrace a series of occurrences or an aggregate of acts which are logically related to a single course of criminal conduct." *United States v. Baker*, 14 M.J. 361, 366 (C.M.A. 1983) (rev'd on other grounds) (citing Moore's Federal Practice § 8.07[2] (2d ed. 1982). [18] In *Baker*, in concluding that appellant's offenses for aggravated assault and communication of a threat against the same victim were not separate offenses for purposes of punishment, the court relied upon language in the Manual similar to the language at issue in this case. *Id.* at 369. Specifically, the court highlighted paragraph 76a(5) that stated, "[t]he maximum authorized punishment may be imposed for each of two or more separate offenses arising out of

---

[17] In holding that multiple indictments for single drug sale transactions, committed close in time to one another, did not violate the prohibition against multiplicity the Court noted, "when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." *Blockburger*, 284 U.S. at 302 (quoting Wharton's Criminal Law, 11th ed., §34).

[18] The portion of the decision in *Baker* pertaining to the "fairly embraced" test regarding lesser-included offenses was abandoned in *United States v. Teters*, 37 M.J. 370, 376 (C.A.A.F. 1993).

the same act or transaction." *Id., see also MCM*, 1969. From this language, the court concluded two rules. *Id*. "First, if the offenses do not arise from the same act or transaction punishment may be imposed for each offense" and "second, if the offenses arise from the same act or transaction, a punishment may not be imposed for each offense if they are not separate offenses." *Id*. The court concluded that the two offenses for which appellant was convicted occurred "contemporaneously, at the same place and during appellant's lone encounter" with the victim. *Id*. at 369. The court relied upon additional language in the manual stating that "offenses may not be separate . . . [w]hen two offenses are committed as a result of a *single impulse* or intent." *Id*. at 370. (citing language directly from the *MCM*, ¶76(a)(5)(b)) (emphasis added). While acknowledging additional rules outlined in the Manual providing examples of when offenses may not be considered separate for purposes of sentencing, the court ultimately concluded there was ambiguity concerning application of those rules in cases in which "each of two offenses contains different elements of proof and they are the product 'of a single impulse.'" *Id*. As a result of the ambiguity in interpreting the rules for sentencing, the court applied the rule of lenity and ruled in favor of appellant by holding that the military judge erred in instructing the panel members as to a maximum sentence which aggregated the statutory maximum sentence for both the aggravated assault and communication of a threat. *Id*. I note that the language pertaining to a *single impulse* is not included in the MCM applicable in appellant's case and therefore conclude the *Baker* analysis is not directly applicable in this case. However, I do find the *Baker* court's analysis of what constitutes a *transaction* instructive.

*Federal District Court Decisions Grouping Offenses Arising from One Transaction*

Since I only find the *Baker* decision instructive in resolving the application of R.C.M. 1002(d)(2)(B)(i) and interpretation of the term *transaction*, I find it helpful to look to federal district courts' interpretation of the term *transaction* for purposes of sentencing.

The language in R.C.M. 1002(d)(2)(B)(i) at issue in this case is also present in the United States Sentencing Guidelines (Sentencing Guidelines) which were referenced in the MJRG's recommendation on revisions to Article 56. Mil. Just. Rev. Group, Report of the Military Justice Review Group: Part I: UCMJ Recommendations (2015), p 510 n.40 (referencing the United States Sentencing Guidelines in recommending amendments to Article 56, UCMJ, requiring segmented sentencing when sentenced by a military judge). Specifically, as noted by the majority, the report recommended amending Article 56, UCMJ, to replace unitary sentencing with segmented sentencing requiring a term of confinement for each offense of which an accused is convicted. *Id*. at 509. The report acknowledged that, "[s]egmented sentencing requires protections to ensure that an accused is not unfairly sentenced twice for what is essentially one offense" and "[i]f the offenses involved the same transaction, victim, and harm, the sentence would be overly

severe for what was essentially one criminal act."[19] *Id*. Noting that this recommendation is "rooted in the federal system where federal district courts generally have broad discretion in imposing a consecutive or concurrent sentences," the report goes on to acknowledge that a federal judge's sentencing discretion is limited by: (1) the consideration of factors outlined in 18 U.S.C. §3553(a),[20] many of which were adopted into R.C.M. 1002(f); and, (2) applicable federal sentencing guidelines or policy statements issued by the Sentencing Commission. *Id*. at 510, n.40. Given that the MJRG acknowledges its recommendation to amend Article 56, UCMJ, is "rooted in the federal system" and it also acknowledges that a judge's sentencing discretion is limited by the federal sentencing guidelines, I find district court opinions in applying the sentencing guidelines instructive in interpreting the term transaction.

District courts are instructed by the sentencing guidelines that "[a]ll counts involving substantially the same harm shall be grouped together into a single group." United States Sentencing Guidelines (U.S.S.G.) §3D1.2. Counts involve substantially the same harm in four situations. *Id*. The provision applicable to this case states that offenses involve substantially the same harm when they, "involve the same victim and the same act or transaction," U.S.S.G. §3D1.2(a). The commentary reveals that counts are to be grouped together when "they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim." *Id*. at §3D1.2 cmt. n.3. The decision whether to group independent offenses under the guidelines turns on timing as indicated further in the commentary.

---

[19] The report further states, "This is of special concern in the military justice system where the UCMJ has several ambiguous offenses, unknown in the civilian practice, that increase the potential for unreasonable multiplication of charges; where prosecutors are expected to charge all known offenses at a single trial; and the accused must reach a high bar to have charges severed." MJRG Report at 509. The report noted offenses unique to the military such as disrespect, disobedience, and dereliction offenses. *Id*. at n.37

[20] When determining an appropriate sentence, this statute requires the court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense; (3) deterrence to criminal conduct; (4) protection of the public from further crimes of the defendant;(5) the kinds of sentences available; (6) sentencing guidelines and policy statements of the Sentencing Commission; (7) the need to avoid unwarranted sentence disparities among defendants with similar records and convicted of similar conduct; and, (7) the need to provide restitution to the victims of any offense. 18 U.S.C. §3553(a).

Some examples noted in the guidelines in which counts should be grouped together include when: a defendant is convicted of kidnapping and assaulting the victim during the course of the kidnapping; a defendant is convicted of bid rigging (an antitrust offense) and of mail fraud for signing and mailing a false statement that the bid was competitive; a defendant is convicted of two counts of assault on a federal officer for shooting at the same officer twice while attempting to prevent apprehension as part of a single criminal episode. However, if a defendant is convicted of two counts of assault on a federal officer for shooting at the officer on two separate days, then such counts are not to be grouped together. *Id.*

Federal district court decisions involving multiple criminal counts involving substantially the same harm are instructive in determining the meaning of what constitutes one *transaction* in grouping offenses. Multiple sexual offenses involving the same victim and occurring on the same day have generally been grouped as one offense for sentencing purposes under the guidelines. *See United States v. Wise*, 447 F.3d 440 ( 5th Cir. 2006) (holding that the district court properly grouped child pornography offenses involving the same victim and occurring on the same day and rejecting appellant's assertion the district court erred in failing to group offenses occurring on different days); *United States v. Sneezer*, 983 F.2d 920, 925 (9th Cir. 1992) (per curiam) (holding that sexual assaults of the same victim "separated by only a few minutes" must be grouped). On the other hand, district courts have held that sexual offenses occurring with the same victim on different days do not constitute substantially the same harm. *See United States v. Vasquez*, 389 F.3d 65 (2d Cir. 2004) (holding that multiple instances of sexual misconduct with the same victim on different occasions are "not substantially the same harm" for purposes of grouping offenses); *United States v. Griswold*, 57 F.3d 291, 296 (3d Cir. 1995) (noting that multiple counts of rape involving the same victim are not to be grouped together under the Guidelines); *United States v. Big Medicine*, 73 F.3d 994, 997 (10th Cir. 1995) (finding that defendant's 75 instances of sexual contacts with the same minor should not be grouped); *United States v. Bonner*, 85 F.3d 522, 524-25 11th Cir. 1996) (holding that "[m]ultiple, separate instances of fear and risk of harm, not one composite harm, occur when the defendant robs or rapes the same victim on different occasions."); *United States v. Bivens*, 811 F.3d 840, 843 (6th Cir. 2016) (noting that "sex crimes committed by the same defendant against the same victim over an extended period of time" amounts to a "fresh harm the victim must face anew").

I find that the language of R.C.M. 1002(d)(2)(B)(i) requires concurrent sentences for multiple specifications involving the same victim and *substantially the same harm*. Thus, I find that the definition of transaction is flexible, as noted in *Baker*, such that the term should be interpreted to include multiple specifications involving substantially the same harm.

*The Military Judge Erred in Adjudging Consecutive Sentences*

In considering the rationale from *Baker* and federal district court cases, which both include the same language at issue in this case, I find that appellant's offenses arose from the same *transaction*. As such, the military judge erred in adjudging consecutive sentences and failed to comply with the mandate of R.C.M. 1002(d)(2)(B)(i).

I concur with the standard of review as outlined by the majority. "The interpretation of the UCMJ and R.C.M. provisions and the military judge's compliance with them are questions of law, which we review de novo." *United States v. St. Blanc*, 70 M.J. 424, 427 (C.A.A.F. 2012). Since appellant did not object at trial to the imposition of consecutive sentences, this court reviews for plain error. *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018).

I part ways with the majority in the application of a reasonableness standard to the military judge's determination whether offenses involving the same victim either did or did not "involve substantially the same harm." The majority relies primarily upon *Booker*, and the Court's application of reasonableness as the appellate standard of review. 543 U.S. at 261 (2005). However, the Court in *Booker*, held that the reasonableness standard of review was for purposes of an appellate court determining whether the district court's sentencing range was reasonable given the factors outlined in §3353(a) that guide sentencing. *Id*. The Court held the reasonableness standard applied to whether the *overall* sentencing range, and thereby the ultimate sentence, was reasonable within the context of the applicable factors the court must consider. The *Booker* Court inferred that standard of review "based on the statutes, language and basic purposes." *Id*. In applying a reasonableness standard, the *Booker* Court did so in the context of transforming sentencing guidelines into merely being advisory.

I find the reasonableness standard inapplicable in this case for two reasons. First, R.C.M. 1002(d)(2)(B) includes a mandate requiring a military judge to impose concurrent sentences if any of the five conditions outlined in the rule arise in a given case. Since we review the interpretation of the R.C.M. de novo, a reasonableness standard is inapplicable. And the reasonableness standard of review was applied more to the evaluation of the sentence as a whole in light of the factors outlined in §3553(a). Second, Congress has explicitly set out our standard of review for evaluating the military judge's overall sentence in Article 66(d), UMCJ, in that, "[t]he Court may only affirm so much of the findings of guilty, and the sentence or such part or amount of the sentence, as the Court finds correct in law and fact and determines, on the basis of the entire record, *should be approved*." In exercising this broad power of plenary review, our superior court has described the CCAs as having "*carte blanche* to do justice." *United States v. Kelly*, 77 M.J. 404, 406 (C.A.A.F. 2018) (cleaned up). Thus, this court "has discretion to approve only that

19

part of a sentence that it finds 'should be approved' even if the sentence is 'correct' as a matter of law." *Id.* (quoting *United States v. Nerad*, 69 M.J. 138, 142 (C.A.A.F.)). In determining whether a sentence "should be approved," the standard is "not legality alone, but legality limited by appropriateness." *Nerad*, 69 M.J. at 141. This court's review of sentence appropriateness must include "an 'individualized consideration' of the particular [appellant] based on the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (cleaned up) (citations omitted).

In appellant's case, the two sexual assaults for which he was convicted, penetrating the victim's vulva with his penis and penetrating the victim's mouth with SPC ███ s penis, occurred simultaneously. Appellant's sexual assault of the victim by penetrating her vulva with his penis only began once appellant invited SPC ███ to join their initially consensual sexual encounter over the victim's objection. Up to that point, appellant's sexual intercourse with the victim was consensual. Upon the victim's verbal expression of non-consent, appellant committed an assault consummated by a battery by grabbing the victim's face and telling her to "shut up." This assault consummated by a battery facilitated the sexual assault then in progress. Within mere minutes, if that, appellant aided and assisted in SPC ███ 's penetration of the victim's mouth with SPC ███ s penis while appellant continued his penetration of the victim's vulva with his own penis which was non-consensual at that point. I find that the non-consensual sexual acts and the physical assault occurred in one continuous interaction, uninterrupted. I further find that the sexual assault of the victim, by two individuals, was based upon one criminal impulse. Appellant's impulse was to engage in a sexual intercourse with the victim at the same time as a third party. While each of appellant's offenses constitute separate criminal *acts*, I find they involve a single impulse and substantially the same harm. Since these near simultaneous acts were substantially one harm against the same victim, they are one *transaction* for purposes of 1002(d)(2)(B)(i). I therefore hold that the military judge failed to comply with the mandate in R.C.M. 1002(d)(2)(B)(i) and erred in adjudging consecutive sentences.

Having concluded that the military judge erred in imposing consecutive terms of confinement, I turn to whether the error was plain and obvious. Given the facts of this case, I find the military judge's error was plain and obvious. It was clear from the trial testimony that the non-consensual penetration of the victim's vulva started within a few minutes of the then simultaneous non-consensual penetration of the victim's mouth. The assault by grabbing the victim's face occurred after her verbal protests and in facilitation of the charged sexual assault acts. The testimony at trial made clear the facts underlying the charged offenses and clear that these acts involved one transaction and substantially the same harm. The error materially prejudiced appellant's substantial right not to be punished for what was essentially one crime. Thus, appellant's terms of confinement should run consecutively.

BATRES — ARMY 20220223

FOR THE COURT:



JAMES W. HERRING, JR.
Clerk of Court

21