*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Oscar A. BATRES, Private**
United States Army, Appellant

**No. 25-0019**
Crim. App. No. 20220223

Argued April 29, 2025—Decided September 9, 2025

Military Judges: Travis Rogers and G. Bret Batdorff

For Appellant: *Captain Patrick McHenry* (argued); *Colonel Philip M. Staten, Lieutenant Colonel Autumn Porter, Major Robert D. Luyties*, and *Captain Amir Hamdoun* (on brief).

For Appellee: *Captain Stewart A. Miller* (argued); *Colonel Richard E. Gorini* and *Justin L. Talley* (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge JOHNSON joined.

———————

Judge HARDY delivered the opinion of the Court.

Appellant and a fellow soldier jointly performed sexual acts upon the victim without her consent. Based on this misconduct, a general court-martial convicted Appellant of two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2018), and one specification of assault consummated by a battery in violation of Article 128, UCMJ, 10 U.S.C. § 928 (2018). In addition to other punishments, the military judge sentenced Appellant to twenty months of confinement for each specification of sexual assault and six months of confinement for the assault consummated by a battery. The military judge ruled—without objection—that the three terms of confinement should be served consecutively, for a total of forty-six months of confinement.

On appeal, the United States Army Court of Criminal Appeals (ACCA) specified the issue of whether Appellant's three offenses involved "the same victim and the same act or transaction" under Rule for Courts-Martial (R.C.M.) 1002(d)(2)(B)(i), which would have required the military judge to order Appellant's sentences to be served concurrently rather than consecutively. The ACCA concluded that the three offenses did not involve the same act or transaction and affirmed the findings and sentence. We granted review to determine whether the military judge erred in ordering Appellant's segmented sentences to run consecutively.

Because Appellant did not object to having been sentenced to consecutive terms of confinement at the trial level, we now review that forfeited issue for plain error. Even assuming that the military judge erred in his implicit determination that these offenses did not constitute the "same transaction" for purposes of R.C.M. 1002(d)(2)(B)(i), that error was not plain or obvious. Accordingly, we affirm the decision of the ACCA.

## I. Background

On July 2, 2021, Appellant and the victim met in line at Walmart and quickly entered into a consensual sexual

2

relationship. Appellant invited the victim to a Fourth of July party, where the two of them met fellow soldier Specialist (SPC) PN. Appellant, the victim, and SPC PN then went to a second party at the barracks during which SPC PN and another soldier interrupted Appellant and the victim having consensual sex. After leaving with SPC PN and some other soldiers to watch fireworks, Appellant and the victim returned with SPC PN and the others to the location of the first party.

When they arrived back at the first location, Appellant and the victim separated themselves from the others and again engaged in consensual sex in the parking lot against the side of the victim's car. Wondering what was delaying Appellant and the victim, SPC PN returned to the parking lot and approached the victim's car, but when he saw that Appellant and the victim were having sex, he turned to walk away. SPC PN then heard Appellant say, "[c]ome on, join in, man." After some hesitation, SPC PN walked towards Appellant and the victim. The victim then told Appellant, "I did not ask for this; I didn't agree to this."

The victim testified that Appellant then grabbed her face and told her to "shut up." Appellant continued to have sexual intercourse with the victim, and he pushed the victim's head towards SPC PN's penis and told her to "take it." SPC PN's penis penetrated the victim's mouth. Then Appellant, with SPC PN's help, placed the victim on her back in the back seat of her car where SPC PN had sex with the victim.

Despite the victim again stating that this was not what she wanted, SPC PN continued until he ejaculated. After SPC PN finished, the victim started crying and repeating that this was not what she wanted. The encounter ended a few minutes later when two other soldiers from the group approached the car. Appellant and SPC PN then called 911 and reported themselves to law enforcement.

Based on these events, the Government charged Appellant with three specifications of violating Article 120, UCMJ: one for penetrating the victim's vulva with his own

penis, one for penetrating the victim's mouth with SPC PN's penis, and one for penetrating the victim's vulva with SPC PN's penis. The Government also charged Appellant with one specification of assault consummated by a battery in violation of Article 128, UCMJ, for grabbing the victim's face with his hand. A panel with enlisted members sitting as a general court-martial convicted Appellant, contrary to his pleas, of two of the three specifications of sexual assault and of the single specification of assault consummated by a battery.[1]

During their sentencing arguments, neither the Government nor Appellant raised the issue of whether any adjudged segmented sentences for the three findings of guilty should run consecutively or concurrently. The military judge sentenced Appellant to a dishonorable discharge, reduction to E-1, twenty months of confinement per sexual assault specification, and six months of confinement for the assault consummated by a battery, ordering all terms of confinement to run consecutively for a total of forty-six months of confinement.

On appeal, the ACCA specified the issue of whether Appellant's offenses involved the same victim and the same act or transaction under R.C.M. 1002(d)(2)(B)(i) such that the military judge was required to order Appellant's sentences to run concurrently. *United States v. Batres*, No. ARMY 20220223, 2024 CCA LEXIS 358, at *2, 2024 WL 3934555, at *1 (A. Ct. Crim. App. Aug. 23, 2024) (unpublished). In a split decision, the ACCA panel found that the military judge did not err, and accordingly, it affirmed the findings and sentence. *Id.* at *19-21, 2024 WL 3934555, at *8. This Court granted review of the following issue:

> Whether Appellant's offenses involved the same victim and the same transaction under Rule for Courts-Martial 1002(d)(2)(b)(i) such that the

---

[1] The panel acquitted Appellant of the single specification of sexual assault for penetrating the victim's vulva with SPC PN's penis.

military judge erred in ordering Appellant's seg-
mented sentences to run consecutively.

*United States v. Batres*, 85 M.J. 331 (C.A.A.F 2025) (order
granting review).

## II. Standard of Review

Interpretation of the R.C.M. is a question of law that
this Court reviews de novo. *H.V.Z. v. United States*, 85 M.J.
8, 13 (C.A.A.F. 2024). This Court reviews findings of fact
by a military judge for clear error. *United States v.
Springer*, 58 M.J. 164, 167 (C.A.A.F. 2003).

When an appellant forfeits an issue at the trial level,
this Court reviews a military judge's decision on that issue
for plain error. *United States v. Davis*, 76 M.J. 224, 229
(C.A.A.F. 2017); R.C.M. 905(e). To prevail on a nonconsti-
tutional forfeited issue, an appellant must demonstrate
that there was error, that the error was plain or obvious,
and that the error was materially prejudicial to the appel-
lant. *Davis*, 76 M.J. at 229.

## III. Discussion

In 2016, Congress amended Article 56, UCMJ, 10
U.S.C. § 856 (Supp. IV 2013-2017), introducing segmented
sentencing to the military justice system. *See United States
v. Flores*, 84 M.J. 277, 280 (C.A.A.F. 2024) (describing the
shift from unitary to segmented sentencing). Under this
new sentencing regime, a military judge must specify both
a term of confinement for each offense for which an accused
is found guilty and whether those terms will run consecu-
tively or concurrently. *Id.*; Article 56(c)(2), UCMJ (2018).
To accommodate military judges' new sentencing duties,
the President amended R.C.M. 1002 in the 2019 edition of
the *Manual for Courts-Martial* to provide guidance about
when segmented sentences should run concurrently or con-
secutively.[2]

---

[2] All citations to the Rules for Courts-Martial in this opinion
refer to the *Manual for Courts-Martial, United States* (2019 ed.)
(*Manual* or *MCM*), unless otherwise noted.

The version of R.C.M. 1002 that governed Appellant's sentencing included the following provisions:

> If a sentence includes more than one term of confinement, the military judge shall determine whether the terms of confinement will run concurrently or consecutively. For each term of confinement, the military judge shall state whether the term of confinement is to run concurrently or consecutively with any other term or terms of confinement. The terms of confinement for two or more specifications shall run concurrently—
>
> > (i) when each specification involves the same victim and the same act or transaction;
> >
> > . . . .
> >
> > (iii) when the accused is found guilty of two or more specifications and the military judge finds that the charges or specifications are unreasonably multiplied.

R.C.M. 1002(d)(2)(B)(i), (iii).[3] Because there is no dispute that Appellant's specifications were not multiplicitous, and all three of Appellant's specifications involved the same victim and different acts, the critical question in this case is whether the specifications involved the same "transaction" under R.C.M. 1002(d)(2)(B). As the well-reasoned

---

[3] In August 2023, the President promulgated a new version of R.C.M. 1002 that excluded the language at issue in this case providing guidance about whether segmented sentences should run consecutively or concurrently. *2023 Amendments to the Manual for Courts-Martial, United States*, Exec. Order No. 14,103, Annex 3 § 1(m), 88 Fed. Reg. 50,535, 50,708-10 (Aug. 2, 2023). As a result, the language regarding "the same victim and the same act or transaction" is absent from the version of R.C.M. 1002 included in the printed edition of the 2024 *Manual*. *See* R.C.M. 1002(b) Discussion (2024 ed.) (noting only in the Discussion that military judges "may exercise broad discretion in determining whether terms of confinement will run concurrently or consecutively consistent with R.C.M. 1002(c)"). However, in December 2024, the President restored this language, redesignating it as R.C.M. 1002(b)(2)(B). *2024 Amendments to the Manual for Courts-Martial, United States*, Exec. Order No. 14,130, Annex § 1(z), 89 Fed. Reg. 105,343, 105,359 (Dec. 27, 2024).

opinions from the split ACCA panel below demonstrate, that question is not easily answered.

### A. Same Transaction

We begin by noting our agreement with the ACCA that R.C.M. 1002(d)(2)(B) does not merely codify the Constitution's protection against double jeopardy. *See* U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb").[4] The Double Jeopardy Clause protects criminal defendants not just from successive prosecutions for the same offense, but also for multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794, 802-03 (1989). In the military justice system, those protections are vindicated by the doctrine of multiplicity, which applies the Supreme Court's *Blockburger*[5] elemental analysis. *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). If charges are multiplicious, they must be so both for findings and for sentence, so there is no separate doctrine of multiplicity of offenses for sentencing purposes. *Id.*

Instead of protecting against double jeopardy, we view the President's guidance in R.C.M. 1002(d)(2)(B) to be an exercise of his discretionary authority to ensure that the charges and specifications against an accused—even if they are not multiplicious or otherwise unlawful—do not unduly exaggerate the accused's punitive exposure. *See* Article 36, UCMJ, 10 U.S.C. § 836 (2018) (authorizing the President to prescribe rules to regulate courts-martial). Thus, R.C.M. 1002(d)(2)(B) is a provision—like R.C.M. 307(c)(4)[6]

---

[4] Congress has further codified this constitutional protection as Article 44, UCMJ, 10 U.S.C. § 844 (2018). Similarly, the President has incorporated it into the Rules for Courts-Martial as R.C.M. 907(b)(2)(C).

[5] *Blockburger v. United States*, 284 U.S. 299 (1932); *see also United States v. Teters*, 37 M.J. 370 (C.A.A.F.1993).

[6] R.C.M. 307(c)(4) states: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."

and R.C.M. 1002(f)[7]—by which the President has limited the total punishment that a convicted servicemember will receive below that which the Constitution would have otherwise allowed.

The combined effect of these rules is that the *Manual* imposes multiple limitations on an accused's maximum criminal exposure—limitations that at times can overlap—either by restricting the charges that may be brought or by limiting the punishment that may be imposed.[8] We acknowledge that these various limitations can be confusing, and that they have been frequently criticized. *See, e.g.*, *Baker*, 14 M.J. at 372 (Cook, J., dissenting) (decrying the "chaos" that constitutes this Court's multiplicity and unreasonable multiplication of charges jurisprudence); Michael J. Breslin & LeEllen Coacher, *Multiplicity and Unreasonable Multiplication of Charges: A Guide to the Perplexed*, 45 A.F. L. Rev. 99, 99 & n.8 (1998) (explaining the distinctions between these various limitations). But our task in this case is not to reconsider either the necessity or the wisdom of these limitations. The only issue before us is the meaning of the word "transaction" in R.C.M. 1002(d)(2)(B). Nevertheless, we can mitigate some of the confusion surrounding these limitations by interpreting R.C.M. 1002(d)(2)(B) in such a way as to make the rules governing sentencing as consistent as possible. It is

---

[7] R.C.M. 1002(f) states: "In sentencing an accused under this rule, the court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces . . . ."

[8] To be fair to the President, the Court of Military Appeals (CMA) was largely responsible for several of these provisions, which "are not attributable to the President, but merely represent acquiescence to decisions of the [CMA]." *United States v. Baker*, 14 M.J. 361, 372 (C.M.A. 1983) (Cook, J., dissenting), *abrogated on other grounds by United States v. Teters*, 37 M.J. 370, 376; *id.* at 371 (Everett, C.J., concurring) (noting that Judge Cook "correctly places the blame for this unhappy situation on our Court, rather than the President").

the application of this principle that leads us to a different conclusion than the ACCA about the meaning of the word "transaction."

To be clear, we agree with much of the ACCA's analysis of R.C.M. 1002(d)(2)(B). In its opinion, the ACCA correctly noted that ordinary rules of statutory construction apply to the interpretation of the R.C.M. and that terms should be given their plain meaning. *Batres*, 2024 CCA LEXIS 358, at *9-10, 2024 WL 3934555, at *4. We further agree that because courts should strive to give meaning to each word in the rule—and given R.C.M. 1002(d)(2)(B)'s use of the disjunctive "or"—the word "transaction" must have a different meaning than the word "act." *Id.* at *10, 2024 WL 3934555, at *4 (citing *United States v. Sager*, 76 M.J. 158, 161 (C.A.A.F. 2017)). Finally, we also agree that the word "transaction" is a flexible term that can reasonably be interpreted to have various meanings. *Id.* at *15, 2024 WL 3934555, at *6.

We differ from the ACCA, however, in our evaluation of the importance of the CMA's decision in *Baker*. In *Baker*, the CMA examined the closely related doctrine of unreasonable multiplication of charges, focusing on the President's guidance in the then-current edition of the *Manual* that "[o]ne transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person." 14 M.J. at 365 (quoting *MCM* ch. VI, para. 26.b (1969 rev. ed.)). The CMA concluded that the word transaction, as used in that provision, is "generally construed to embrace a series of occurrences or an aggregate of acts which are logically related to a single course of criminal conduct." *Id.* at 366 (citations omitted).

After *Baker*, the doctrine of unreasonable multiplication of charges was incorporated into the 1984 edition of the *Manual* as part of R.C.M. 307(c)(4) (1984 ed.). Initially, the Discussion of that rule incorporated language that was virtually identical to the language interpreted by the CMA in *Baker*, stating: "What is substantially one transaction should not be made the basis for an unreasonable

multiplication of charges against one person." R.C.M. 307(c)(4) Discussion (1984 ed.). That same language later migrated from the Discussion into the main text of R.C.M. 307(c)(4), where it still appears in more recent editions of the *Manual*, including the 2019 edition. *See*, *e.g.*, R.C.M. 307(c)(4) (2019 ed.); R.C.M. 307(c)(4) (2024 ed.). Notably, the presence of an unreasonable multiplication of charges is also a separate basis under R.C.M. 1002(d)(2)(B) for determining that segmented terms of confinement should be served concurrently. *See* R.C.M. 1002(d)(2)(B)(iii) (requiring concurrent terms when "the military judge finds that the charges or specifications are unreasonably multiplied").

The ACCA recognized these facts but nevertheless declined to adopt the definition of "transaction" from *Baker* and endeavored to provide a new definition for transaction as specifically used in R.C.M. 1002(d)(2)(B)(i). *Batres*, 2024 CCA LEXIS 358, at *13-20, 2024 WL 3934555, at *6-8. Thus, under the ACCA's decision, "transaction" would have one meaning under R.C.M. 307(c)(4) and as applied to the doctrine of unreasonable multiplication of charges under R.C.M. 1002(d)(2)(B)(iii), but a different meaning under R.C.M. 1002(d)(2)(B)(i). No matter how well-reasoned the ACCA's analysis might have been, we see no reason to further complicate this area of the law by defining "transaction" differently for two closely related rules that serve the same purpose: protecting criminally accused servicemembers from unduly exaggerated punitive exposure.

Accordingly, we hold that the word "transaction" in R.C.M. 1002(d)(2)(B)(i) has the same meaning that the CMA held that it has in the context of unreasonable multiplication of charges: "a series of occurrences or an aggregate of acts which are logically related to a single course of criminal conduct." *Baker*, 14 M.J. at 366.[9]

---

[9] Contrary to Appellant's argument, this interpretation does not render R.C.M. 1002(d)(2)(B)(i) and R.C.M. 1002(d)(2)(B)(iii) superfluous because each provision has at least one requirement that the other provision does not. Subsection (i) applies only

## B. No Plain Error

When the military judge ruled that Appellant's segmented sentences should run consecutively, Appellant's defense counsel failed to object or otherwise challenge the military judge's rulings. Appellant therefore forfeited his opportunity to litigate this issue at trial, and we review the military judge's decision for plain error. *Davis*, 76 M.J. at 229; R.C.M. 905(e)(2).

During the first step of our plain error analysis, we must determine whether the military judge erred in implicitly concluding that the specifications for which Appellant was found guilty did not involve the same victim and the same act or transaction under R.C.M. 1002(d)(2)(B)(i). For the purpose of this analysis we presume, without deciding, that he did err.

In the second step of the plain error analysis, we must decide whether that presumed error was plain or obvious. For two reasons we conclude that it was not. First, we recognize that this Court has never previously interpreted the text of R.C.M. 1002(d)(2)(B). The meaning of the term "transaction"—at least in the context of this specific rule—was a matter of first impression. Second, although we do not know the military judge's specific reasoning, the ACCA came to the same conclusion after performing a rigorous and detailed analysis of the meaning of "transaction." *Batres*, 2024 CCA LEXIS 358, at *10-18, 2024 WL 3934555, at *5-7. Although we believe the ACCA gave too little deference to the CMA's decision in *Baker*, we cannot otherwise fault its analysis. Because we conclude that the presumed error was not plain or obvious, we need not determine whether the error was materially prejudicial to Appellant.

---

when two specifications involve the "same victim," while subsection (iii) does not have this requirement. And subsection (iii) applies only when all factors considered have made a multiplication of charges unreasonable, while subsection (i) does not have this requirement. *See United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001) (noting that the legal standard for unreasonable multiplication of charges is reasonableness).

Even if the military judge erred in this case, that error was not plain or obvious. We therefore affirm the military judge's decision to order Appellant's sentences to run consecutively rather than concurrently.

## IV. Conclusion

For the foregoing reasons, the judgment of the United States Army Court of Criminal Appeals is affirmed.